[Civ. No. 24.   Third Appellate District.—April 11, 1906.]

## THE PEOPLE, Respondent, v. FRANK STOFER, Appellant.

CRIMINAL LAW—GRAND LARCENY—MONEY TAKEN FROM PERSON—PETIT LARCENY—QUESTION FOR JURY—ERROR IN INSTRUCTIONS.—Under a charge of grand larceny committed in taking the sum of $20 from the person of another with intent to steal, where the evidence left it in doubt whether the money was taken from his person with such intent, or whether it was taken from a purse while in defendant's possession by assent of such person, express or implied, or taken from a table on which such person had left the money, the question of grand or petit larceny was for the jury

to determine, and it was error for the court to take the question of petit larceny therefrom by instruction that the only verdict must be guilty of grand larceny or not guilty, and by refusal to instruct them on the lesser crime of petit larceny.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial. J. C. Gray, Judge.

The facts are stated in the opinion of the court.

Frank Thunen, and Wm. E. Duncan, Jr., for Appellant.

U. S. Webb, Attorney General, for Respondent.

CHIPMAN, P. J.—Defendant was accused of the crime of grand larceny in that he did, on August 23, 1905, wrongfully and feloniously "steal, take and carry away from the person and immediate possession of John Coleman twenty dollars in gold coin . . . and fifty cents in silver money," the personal property of the said Coleman. The jury found the defendant guilty of grand larceny, and the court adjudged that the defendant be imprisoned for the term of ten years.

Defendant appeals from the judgment and the order denying his motion for a new trial.

Defendant was refused an instruction, the purpose of which was to inform the jury that the stealing of money less in value than fifty dollars would not constitute grand larceny unless it was taken from the person of another, and further to inform the jury of the two degrees in larceny, and that although guilty of stealing the money, the jury should have been given the opportunity under proper instructions to determine whether the crime was grand or petit larceny.

The court instructed the jury as follows: "There are but one of two verdicts that you can find in this case. . . . They will be 'guilty of grand larceny,' or 'guilty as charged'; and 'not guilty.' There is no lesser crime in it; it is either 'guilty,' or 'not guilty.' The taking of money from the person of another, as I have read to you in the statute, is grand larceny; it makes no difference whether the amount be great or small."

3 Cal. App.—27

The instruction given by the court removed from the jury all consideration of the lesser offense of petit larceny, and not only assumed as proven the important fact that the money was taken from the person of Coleman, but that there was no evidence from which the jury might have reasonably drawn the inference that the money was not so taken.

Respondent cites cases where the supreme court has held that in a prosecution for murder, the refusal of the court to instruct the jury that they may return a verdict of manslaughter is not error, if the evidence clearly shows that the jury would not have been warranted in rendering a verdict of manslaughter, and where the appellate court was able to say from an examination of the evidence that the crime of manslaughter was not involved. *People* v. *Lee Gam,* 69 Cal. 552, [11 Pac. 183], is among the cases so holding. The principle of these cases need not be questioned. It is, nevertheless, well established as a principle of criminal jurisprudence that where murder is charged and the facts and circumstances would warrant the jury in finding the defendant guilty of the lesser offense of manslaughter, it would be prejudicial error for the court to refuse an instruction as to what constitutes manslaughter. The rule applies in grand larceny cases. (See subject discussed in *People* v. *Comyns,* 114 Cal. 107, [45 Pac. 1034].) The question there was as to whether the defendant was guilty of a larceny of articles in value exceeding fifty dollars. Here the question of the value is not in dispute, but the equally important question is in dispute, namely, Did defendant take the money from the person of Coleman with intent to steal it? If the facts and circumstances were such as to leave open to reasonable doubt whether the money was taken by defendant from the person of Coleman in the sense intended by the statute, the court erred in withdrawing the question from the jury and confining their inquiry to the sole question of defendant's guilt as charged in the information.

The mere taking of personal property from the person of another is not in itself sufficient to constitute the crime, for the taking may have been without intent to steal the property and may have been with the actual or implied assent of the owner. The supreme court in *People* v. *McElroy,* 116 Cal.

583, [48 Pac. 718], after reviewing the cases, said: "In view of these authorities and the origin of the statute, we think its obvious purpose was to protect persons and property against the approach of the pickpocket, the purse-snatcher, the jewel abstracter, and other thieves of like character who obtain property by similar means of stealth or fraud, and that it was in contemplation that the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession—such as clothing, apparel or ornaments, or things contained therein, or attached thereto, or property held or carried in the hands, or by other means, upon the person; that it was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control or possession of the owner while so laid away from his person or out of his hands." It was held in *People* v. *Appleton,* 120 Cal. 250, [52 Pac. 582], not to be error for the court to omit an instruction as to what constitutes taking from the person, within the meaning of the statute, where the defendant asks for no such instruction. But here there was what must be regarded as a request for an instruction on the question.

It is not necessary to state the evidence at length. Coleman and defendant were both negroes, and whether former acquaintances does not appear. Coleman came to Oroville on the afternoon of August 22, 1905, and proceeded to get drunk; he hung around the saloon of one Thorp until midnight, but could not remember what befell him the balance of the night. The next morning about 9 o'clock he and defendant were together in Thorp's saloon; defendant had Coleman's valise and said he was "going to take Coleman up to the half-past 12 train and see that he went off on it." Coleman was still very much intoxicated. The two went out of the saloon together and not long thereafter defendant went back and handed a purse to the barkeeper, stating that it contained Coleman's money. Later, defendant went back again and said to Thorp, who was then taking the place of one of his barkeepers, that Coleman had sent him for five dollars. Thorp refused to give it to him and defendant went out again. Later both Coleman and defendant returned and Coleman said he wanted his

money. Thorp prudently counted it out to him, to show that it had not been tampered with by him. He testified that there was "a twenty-dollar piece, two fives, two halves, and a few short bits" in the purse when he handed it to Coleman, who treated "all around" and the two then went into a back room together and sat down at a table, Coleman having his purse in his hand and thumping it on the table at times.

Witness Cherry was in this back room. He testified: "They sat that way, talking for about half an hour, and directly Coleman said it was time to go to the train. He said: 'Where is my valise? I want to go to Marysville on that train.' And Stofer said, 'I will get your valise.' It was in that little office in there. This man had the money in his purse, patting it on the table, and Stofer reached over and took the purse out of his hand and went into the place and got his valise; and he was in there two or three minutes, and came out and put the valise on the table, and gave him his purse, and said, 'It is all right; put it in your pocket and we will go to the train.'" Coleman soon after opened the purse and discovered that the twenty-dollar piece was gone and at once accused defendant of taking it. Thorp, hearing the loud talk, went into the back room, saw the purse on the table and found on examination that the twenty-dollar piece was missing. Shortly afterward defendant went out back to a water-closet and Thorp followed him and took from his hand a twenty-dollar piece and a fifty cent piece and brought the money to Coleman. Defendant was soon thereafter arrested.

It seems to us that under the circumstances disclosed defendant had opportunity to have secured the money without taking the purse from the person of Coleman for that purpose. They had been together since 9 o'clock of that morning and defendant had been given possession of the purse by Coleman and had himself deposited it with Thorp for safe-keeping. When the two men went into the back room of Thorp's saloon and sat down together and were talking, as Cherry testified, for a half an hour, Coleman might have allowed defendant to handle the purse and the money might have been taken at such a time. Cherry did not know what money was in the purse when he testified to having seen de-

fendant take it out of Coleman's hand. Besides, the jury were not bound to believe Cherry's testimony. Furthermore, conceding the truth of Cherry's testimony and that the stolen money was in the purse when defendant took it out of Coleman's hand, it was for the jury to say whether defendant intended at that time to steal the money or made up his mind to steal it while he was going to get Coleman's valise. It is not beyond reasonable probability or possibility that the money dropped out of the purse while Coleman was thumping the purse on the table. Coleman had intrusted the purse to defendant earlier in the day, and there is no evidence that he suspected defendant of foul play with him while sitting at this table, or that he kept the purse in his own hands all the time while sitting there. He was in a maudlin condition and had no distinct recollection of what occurred except that on opening the purse he missed the twenty-dollar piece. The evidence may have been and apparently was sufficient to justify a verdict of guilty of larceny, but there was enough of doubt as to whether the larceny was committed in conjunction with the alleged act of taking the money from the person of Coleman to entitle defendant to the verdict of the jury upon this latter element of the alleged crime. Proof of the larceny of the money was not of itself sufficient to support the verdict. As instructed, the jury were not permitted to consider the probability, much less reasonable possibility, that the money was taken from the purse by defendant at some time while it was in defendant's possession by leave of Coleman.

In our view of the law as applied to the facts and circumstances, the court erred in giving the instruction complained of and in refusing to instruct the jury as to what constitutes the taking of property from the person of another, and also in not instructing the jury as to the lesser crime of petit larceny.

The judgment and order are reversed, and cause remanded for a new trial.

McLaughlin, J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 7, 1906.