[Crim. No. 23105. Feb. 2, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOSEPH GEIGER, Defendant and Appellant.

**COUNSEL**

Cliff Gardner, under appointment by the Supreme Court, for Defendant and Appellant.

Quin Denvir, State Public Defender, and Allan H. Keown, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp and George Deukmejian, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Herbert F. Wilkinson, Martin S. Kaye, Ann K. Jensen and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

Edwin L. Miller, Jr., District Attorney (San Diego), Peter C. Lehman and Paul M. Morley, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**GRODIN, J.**—Defendant appeals from a judgment imposed on a jury verdict finding him guilty of second degree burglary. (Pen. Code, § 459.)[1] His principal contention is that the trial court erred in refusing to instruct the jury, in accordance with defendant's theory of the case, that he could be convicted of vandalism (§ 594), a related offense not necessarily included in burglary.[2] We find merit in that contention, on the facts of this case. Clearly a defendant has no general right to have the jury presented with a shopping list of alternatives to the crimes charged by the prosecution. However, we find no reason in law, justice, or common sense why a jury that is not persuaded of the defendant's guilt of the charged offense should not have the opportunity to find him guilty of a lesser related offense where, as here, the lesser offense is closely related to that charged, there is evidence of its commission, and defendant's theory of defense is consistent with such a finding. Indeed, as we shall explain, well-established principles of constitutional dimension, as well as numerous recent decisions by federal courts and the courts of other states, support the giving of instructions upon request in such a situation, and recognize that this option to acquittal benefits the People as well as defendant.

Because we conclude that the failure to give the instruction requested by defendant requires reversal of the judgment, we do not reach defendant's additional claims of error in the admission of evidence.

### The Prosecution Case

The offense occurred at 3 a.m. on Monday, October 26, 1981, in Santa Cruz. Gary Appel awoke to the sound of breaking glass. He looked out of

---

[1]All references are to the Penal Code unless otherwise indicated.

[2]Section 594, subdivision (a), defines vandalism: "(a) Every person who maliciously (1) defaces with paint or any other liquid, (2) damages or (3) destroys any real or personal property not his own, in cases otherwise than those specified by state law, is guilty of vandalism."

the kitchen window of his third floor apartment toward the rear of Jack's, a restaurant, but saw nothing although the area was illuminated by one, and possibly two, lights. He heard a continuous sound of glass breaking and called the police. The sound continued as he did so. He looked out of another window, saw nothing, and went back to bed. Sometime later the police dispatcher called him and asked that he go outside to speak with police officers who had found a bicycle on his lawn near the boundary of the Jack's property. He did not recognize the bicycle.

Jack's had been closed at the usual time of 4 p.m. on Saturday and had not been open on Sunday, October 25. The owner had closed and locked all doors and windows, including a two-foot square rear service window which had a metal lock and was also secured with a wood wedge in the slide mechanism. The cash register which was visible from and within reach of the service window had been emptied by the owner and left with the drawer open.

When called to the restaurant by police shortly after 3 a.m. on the 26th the owner found the sliding service window completely broken, small pieces of glass on the interior and exterior counters of the window, and inside the restaurant as far as six to eight feet from the window. Some jagged glass with blood on it remained in the service window, and there was blood on the counter inside the window. A sliding screen inside the service window was undamaged. An unopened window envelope, containing an invoice addressed to the restaurant, was on the exterior counter of the service window. When the restaurant was closed it was customary for the mail to be pushed through a three-eights inch space under the window to the inside counter, or far enough to fall to the floor. The postal carrier had never left mail on the exterior counter. Nothing had been taken from the restaurant and, apart from the glass, nothing had been disturbed.

Officer Finch arrived at Jack's shortly after 3 a.m., within a minute of the time he was dispatched to investigate suspicious activity. Sergeant Bartle, Lieutenant Gilbert and Officer McConnell arrived almost simultaneously and, in accordance with their usual procedure, approached the restaurant on foot from different directions. Officer Howes was nearby. Finch saw the broken service window. He noted that the interior screen was closed. There were glass and drops of blood on the counter, and on the concrete walkway below it. A double handful of glass, with blood on it, was found on a patio and more was found in a planter box in the rear of the patio along with the wooden stick which he recognized as that used to secure the window. He also found a two-by-four piece of wood, with nails in it, in another planter box in front of the business. In a planter hanging on the patio fence he found glass, with blood on it, and a piece of one-by-one stick.

After making these observations, Finch saw defendant emerge from behind a dumpster in an alleyway or yard and approach Officer McConnell. Finch estimated that he saw defendant about 45 seconds after he arrived at Jack's. He noted that as defendant took items out of his wallet, the items became smeared with blood. He also observed that defendant's right index finger was bleeding. No other person was seen in the area of the restaurant by the police officers.

Finch found a bicycle, a 10-speed model, in the yard of the Appel residence. On the handlebars he found a paper bag containing two George Benson record albums. Fingerprints on some glass fragments were identified as defendant's. Those on the record albums were not of sufficient quality to make identification possible.

Officer McConnell saw defendant as the officer positioned himself in the alley near the restaurant. Defendant was walking toward McConnell who identified himself and told defendant to put his hands where McConnell could see them. In response to McConnell's questions defendant said that he had been at the Dragon Moon Disco and was on his way home. Jack's was not a direct route between the disco and the hotel which defendant said was his residence. As defendant was taking identification from his wallet, McConnell saw a small laceration and blood on the index finger of one hand.

### The Defense

Defendant presented only one witness, the owner of the Dragon Moon Disco, who testified that he had asked defendant to "help out" on the night of October 25 because he was short of help. Defendant had asked him for employment several times and was in the club as a customer that evening. Defendant remained after the 1:30 a.m. closing to help stock the bar. He was upset when the owner told him he would not be paid. The owner left at 2:30 a.m., and did not see defendant thereafter. He had loaned defendant two George Benson record albums that evening.

In argument to the jury, after the court had ruled that no instruction on vandalism would be given, defendant's counsel did not contest the sufficiency of the evidence to prove identity, but suggested that the evidence was not consistent with an intent to steal or commit any other offense in the restaurant. She offered a hypothetical explanation for the broken window by suggesting that a person who is angry, as was defendant when he learned he would not be paid for his work at the Dragon Moon, would express that anger by kicking a trash can, throwing a plate, or as he did by breaking a window. Scared after hearing the crash, he would pick up the pieces of glass and move them. Scared and upset, with nothing else to be done, he

would go home, forgetting about the records. In argument counsel admitted that defendant committed a crime, vandalism, suggested that the jury might like to convict defendant of that crime, but told the jury that, because burglary and attempted burglary were the only charges, the jury had to acquit. The jury was instructed on burglary and attempted burglary.

The case was submitted to the jury at 4:09 p.m. At 4:15 p.m. the jury requested that the testimony of the restaurant owner regarding the blood on the inside of the premises be reread. A verdict of guilty of second degree burglary was returned at 4:52 p.m.

Defendant's strategy at trial was an attempt to convince the jury that the evidence was susceptible of conflicting inferences, one of which was that he had no intent to steal when he broke the window at Jack's, but did so in an outburst of anger and frustration because he had not been paid for his work at the Dragon Moon. Had the jury accepted his theory of the case, and had it been permitted to do so, it should have convicted him of vandalism, for under the instructions given regarding circumstantial evidence a conviction of burglary or attempted burglary would not have been proper.[3] ■■ ■■■■ The trial court denied his request for an instruction on vandalism, however, on the ground that vandalism is not a lesser offense that is necessarily included within the charged offense, burglary.[4]

---

[3]The jury was instructed in the language of CALJIC No. 2.01 (1979 rev.) as follows:

"However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

"Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

"Also, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt.

"If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

[4]For purposes of determining whether an instruction on a lesser included offense may or must be given an offense is necessarily included in the charged offense if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed. (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183].) Vandalism includes elements of damage, injury, or destruction of property in, around, or pertaining to the property entered which are not elements of burglary as statutorily defined or as charged here.

*Discussion*

I.

The People are correct in their assertion that heretofore a defendant's right to instructions on offenses related to that charged has been limited to included offenses. (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 381-382 [158 Cal.Rptr. 343, 599 P.2d 649].) However, as we shall demonstrate, close examination of the reasons underlying that right does not support such a limitation. Rather, as this court has intimated and courts in other jurisdictions have held, the right to instructions on included offenses is grounded upon considerations of fundamental fairness which, in the absence of countervailing state interests, mandate a broader rule. In the fashioning of such a rule we look to precedent from other jurisdictions for guidance.

Recognition that the right to instructions on lesser included offenses is an aspect of that "fundamental fairness" demanded by due process is reflected in two recent decisions of the United States Supreme Court. In the first, *Keeble* v. *United States* (1973) 412 U.S. 205, 212-213 [36 L.Ed.2d 844, 850, 93 S.Ct. 1993], the court found it unnecessary to decide whether due process demands such instructions in all cases, but in the second, *Beck* v. *Alabama* (1980) 447 U.S. 625 [65 L.Ed.2d 392, 100 S.Ct. 2382], the court expressly held that instructions on lesser offenses are required in capital cases. The reasoning of these decisions suggests that instructions on lesser offenses may be required by the due process clause of the Fourteenth Amendment.

In *Keeble,* the court first articulated its concern that in the absence of instructions on lesser offenses, and an option other than conviction of the charged offense or acquittal of the defendant, a jury might resolve doubts as to the defendant's guilt in favor of conviction.

"[I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was

charged [assault with intent to commit serious bodily injury on an Indian reservation], but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict. Indeed, *while we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the Major Crimes Act to preclude such an instruction would raise difficult constitutional questions.* In view of our interpretation of the Act, those are questions that we need not face." (*Keeble* v. *United States, supra,* 412 U.S. 205, 212-213 [36 L.Ed.2d at p. 850], italics added, fn. omitted.)

In *Beck,* however, the court held that in a capital case the jury must be given the "third option" of conviction of a lesser included offense because "the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction" and diminishes the reliability of both the factfinding and the sentencing determination. (447 U.S. at pp. 638, 643 [65 L.Ed.2d at pp. 403, 406].)

We need not anticipate resolution of the federal constitutional question in noncapital cases because the right to instructions on included offenses as an incident of due process under the California Constitution is well established. The necessity for instructions on lesser offenses is founded in the defendant's "constitutional right to have the jury determine every material issue presented by the evidence." (*People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33]. See also *People* v. *Wickersham* (1982) 32 Cal.3d 307, 335 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Stewart* (1976) 16 Cal.3d 133, 141 [127 Cal.Rptr. 117, 544 P.2d 1317]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913].) As this court explained in *People* v. *St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390]: "The requirement of instructions on lesser included offenses is based on the elementary principle that the court should instruct the jury on every material question. [Citation.] The state has no interest in a defendant obtaining an acquittal where he is innocent of the primary offense charged but guilty of a necessarily included offense. Nor has the state any legitimate interest in obtaining a conviction of the offense charged where the jury entertains a reasonable doubt of guilt of the charged offense but returns a verdict of guilty of that offense solely because the jury is unwilling to acquit where it is satisfied that the defendant has been guilty of wrongful conduct constituting a necessarily included offense. Likewise,

a defendant has no legitimate interest in compelling the jury to adopt an all or nothing approach to the issue of guilt. Our courts are not gambling halls but forums for the discovery of truth."

Procedures necessary to ensure reliability in the fact finding process when the state participates in the deprivation of personal liberty are required by due process. (Cal. Const., art. I, § 15; *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 33 [154 Cal.Rptr. 529, 593 P.2d 226], cert. den., 444 U.S. 900 [62 L.Ed.2d 136, 100 S.Ct. 209]; *In re Roger S.* (1977) 19 Cal.3d 921, 937 [141 Cal.Rptr. 298, 569 P.2d 1286].) Instructions on lesser offenses are required because a procedure which affords the trier of fact no option other than conviction or acquittal when the evidence shows that the defendant is guilty of some crime but not necessarily the one charged, increases the risk that the defendant may be convicted notwithstanding the obligation to acquit if guilt is not proven beyond a reasonable doubt. The pressures which create that risk thus affect the reliability of the fact finding process and thereby undermine the reasonable doubt standard.

## II.

Considerations similar to those which led this court to conclude that instructions on lesser included offenses are required by due process appear in decisions of other jurisdictions holding that instructions on uncharged related offenses must also be given if it would be fundamentally unfair to deny the defendant the right to have the court or jury consider the "third option" of convicting the defendant of the related offense. The importance of this option was explained by the United States Court of Appeals for the District of Columbia Circuit in *United States* v. *Whitaker* (D.C.Cir. 1971) 447 F.2d 314, 321: "The defense ought not to be restricted by the stringent constitutional limits upon the prosecutor's right. If the proof at trial would support a jury finding of guilt on a lesser included offense in accordance with the usual criteria, then doubt as to whether the prosecutor could rightfully have requested such a charge should not bar the charge being given at the request of the defense. This gives no unfair option to the defense over the prosecution. In most cases the prosecution can foresee whether the proof is likely to develop strongly favoring a verdict on a lesser included offense, in which event the indictment should so charge, which is the prosecutor's option. If the evidence is such that a jury can rationally—and is likely—to choose the lesser offense, then the interests of justice call for the defense to have the option of the lesser included offense—whether the prosecution chose to put it in the indictment or has the right later to request it or not. This recognizes 'the jury's central role in our jurisprudence,' . . ."

In *Whitaker,* defendant was convicted under an indictment charging first degree burglary. He requested that the court instruct the jury on unlawful

entry as a "lesser included offense" under rule 31(c), Federal Rules of Criminal Procedure (18 U.S.C.),[5] but the trial court denied the instruction, accepting the prosecution's argument that for an offense to be included in another its theoretical elements all must be identically reflected in the theoretical elements of the greater. It was argued that the requirements of that definition had not been met since the offense of unlawful entry required the element of entry without lawful authority and against the will of the lawful occupant, while in certain circumstances burglary could be committed even though the entry was authorized.

The court rejected the prosecution's argument, stating: "A more natural, realistic and sound interpretation of the scope of 'lesser included offense,' in line with our own views on the subject, is that defendant is entitled to invoke Rule 31(c) when a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must also be an 'inherent' relationship between the greater and lesser offenses, *i.e.*, they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense. This latter stipulation is prudently required to foreclose a tendency which might otherwise develop towards misuse by the defense of such rule. In the absence of such restraint defense counsel might be tempted to press the jury for leniency by requesting lesser included offense instructions on every lesser crime that could arguably be made out from any evidence that happened to be introduced at trial." (447 F.2d at p. 319, fn. omitted.) Applying those criteria to the case before it, the court held that the defendant was entitled to the requested instruction.

Other jurisdictions also recognize a right to instructions on related, but not necessarily included, offenses. The decisions recognizing or confirming the right all support a conclusion that the right is necessary to assure the fundamental fairness to which a criminal defendant is entitled. Adopting the *Whitaker* rationale, the Ninth Circuit in *United States* v. *Johnson* (9th Cir. 1980) 637 F.2d 1224, rejected the necessarily included offense rule and concluded that the evidence adduced at trial must be considered in identifying the lesser included offenses on which instructions should be given. That court explained: "The mechanical comparison of statutory elements the government invites us to make may be appealing in its promise of certainty and intellectual purity, but its artificiality is unresponsive to the underlying purposes of the lesser included offense doctrine, as is demonstrated

---

[5]The rule provides: "The defendant may be found guilty of an offense necessarily included in the offense charged . . . ."

by the facts of this case. To the extent we are concerned that a 'jury's practice will diverge from theory' and a defendant may be convicted of a crime for which all elements have not been proven, *Keeble,* 412 U.S. at 212, 93 S.Ct. at 1998, it makes no sense to confine our discovery of lesser included offenses to the barren words of the criminal code, uninformed by the evidence introduced at trial. It is, after all, that evidence which would convince the jury the defendant was guilty of some offense, even if something less than the charged offense, and it is therefore that same evidence which gives rise to whatever temptation the jury may feel to convict of the charged offense in spite of a failure of proof as to one or more prerequisites. We therefore hold that a lesser included offense may be established by the evidence adduced at trial in proof of the greater offense . . . ." (637 F.2d at pp. 1238-1239.) The Tenth Circuit, too, has found the reasoning of *Whitaker* "persuasive." (*United States* v. *Pino* (10th Cir. 1979) 606 F.2d 908.)

In *State* v. *Gopher* (1981) — Mont.— [633 P.2d 1195], the Montana Supreme Court considered the "inherent relationship" approach which led the *Whitaker* court to interpret the Federal Rules of Criminal Procedure as requiring instructions on related offenses, but found it unnecessary to adopt that rationale because Montana decisions already held that " '[a] defendant is entitled to instructions on lesser included offenses if *any* evidence exists in the record which would permit the jury to rationally find him guilty of a lesser offense and acquit him of a greater,' . . . " (633 P.2d at p. 1197.) The court explained that in the case before it "the jury could have been forced to find the defendant guilty [of the greater offense] because the only alternative was acquittal." (*Id.,* at pp. 1197-1198.) On that basis the court held that reversible error occurred when the trial court refused a request by a defendant, charged after an incident with a deputy sheriff with aggravated assault, that the jury be instructed on resisting arrest.

Hawaii has adopted a statutory right to instructions on lesser offenses which are not necessarily included that recognizes a crime as an included offense if a less serious injury or risk of injury is involved. (Hawaii Rev. Stat., § 701-109(4), subd. (c): "It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.") Commenting on the purpose of the lesser offense doctrine of which its statute was a part the Hawaii Supreme Court noted that, "this doctrine has developed into an invaluable tool for the defendant and for society as well. For the defendant, the lesser included offense provides an alternative to the more serious charge. Society also benefits because fewer defendants will be released due to an acquittal. . . ." (*State* v. *Kupau* (1980) 63 Hawaii 1 [620 P.2d 250, 251].)

The Idaho Supreme Court, reconciling prior conflicting opinions on the defendant's right to instructions in *State* v. *Boyenger* (1973) 95 Idaho 396 [509 P.2d 1317, 1321], held that a defendant has a right on request to have the jury instructed "upon all lesser included offenses which the facts and the pleadings of the particular case justify." The defendant in that case had been charged with fraudulent use of a credit card, and had been denied requested instructions on receiving money or property under false personation. Although the court did not explain the reasoning underlying its conclusion, it did state that "courts cannot look merely to the crime as charged in the information to make the determination of whether or not another offense is 'necessarily included' within that charged, but must also look at the evidence adduced at the trial." (*Id.*, at p. 1321.)

The Colorado Supreme Court has also held that a defendant is entitled to instructions not only on offenses included within the statutory definition of the charged offense, but also those shown by the evidence at trial. In *People* v. *Rivera* (1974) 186 Colo. 24 [525 P.2d 431], the defendant had been charged with assault with intent to commit murder, and assigned as error the failure to give a requested instruction on assault with a deadly weapon. The court declined to depart from the statutory test of necessarily included offenses, recognizing defendants' right to fair notice of the charges, but applied that state's rule that "a defendant is entitled to have the court instruct the jury on the defense theory of the case as revealed by the evidence." (*Id.*, at p. 434.) The court reasoned that a request for such an instruction was tantamount to consent to an added count being charged, and concluded that the rule "can insure better trials and fairer verdicts. Without such an instruction, the jury may be aware of the commission of a crime, not the principal charge, and yet convict the defendant of the greater crime. [¶] . . . Where a defendant acquiesces in placing a lesser crime before the jury, the requested instruction allows the jury to consider fully the elements of the crime charged and of the offense the defendant contends was involved—a procedure we deem consistent with the right to trial by jury." (*Id.*)

Michigan, too, in a series of decisions originating in *People* v. *Chambliss* (1975) 395 Mich. 408 [236 N.W.2d 473], has adopted the reasoning of *Whitaker* and the rule recognized by this court in *People* v. *St. Martin, supra,* 1 Cal.3d 524, that a defendant has a right to have the jury determine all of the material issues presented by the evidence. The court reasoned that if the evidence shows a crime less than that charged the defendant should be found guilty of that offense rather than escaping punishment, and should not be convicted of the charged offense simply because the jury recognized that he did commit some offense. "Society has a legitimate interest in the jury's freedom to act according to the evidence." (236 N.W.2d at p. 482.)

Subsequently, in *People* v. *Richardson* (1980) 409 Mich. 126 [293 N.W.2d 332, 338-339], where the defendant was charged with murder the court held that a failure to give instructions on the lesser, but not necessarily included offenses of involuntary manslaughter and reckless use of a firearm not only denied the jury freedom to act in accordance with the evidence, but also deprived the jury "of any option to convict consistently with the defendant's testimony, evidence and theory." (See also *People* v. *Stephens* (1982) 416 Mich. 252 [330 N.W.2d 675]; *People* v. *Stephens* (1979) 407 Mich. 402 [285 N.W.2d 664]; *People* v. *Miller* (1979) 406 Mich. 244 [277 N.W.2d 630].)

## III.

In other contexts this court has both approved and required instructions on related offenses that are not "necessarily included" in the offense charged when the denial of the right to have the jury consider them would be fundamentally unfair, or when conviction of the related offense would be appropriate and would not undermine the defendant's right to notice.

The court found prejudicial error in the failure to give instructions on an uncharged offense when knowledge of the elements was necessary to the jury's understanding of the defense offered by the defendant in *People* v. *Wilson* (1967) 66 Cal.2d 749 [59 Cal.Rptr. 150, 427 P.2d 820]. The defendant was charged with two counts of murder, and first degree verdicts were sought on the theory that the defendant went to the home where the killings occurred with the intent of committing an assault with a deadly weapon, a felony, and thus the killings occurred in the perpetration of burglary. Defendant claimed that when he entered the residence where the killings occurred, he carried a shotgun only to frighten the occupants. His theory of defense was that because he had no intent to commit a felony or theft in the residence, his entry did not constitute a burglary, and neither a first or second degree verdict could be predicated on the felony-murder rule. This court concluded that the trial court had erred in failing to instruct, *sua sponte,* consistent with the defense theory on brandishing a weapon,[6] a misdemeanor. That failure, we said, removed from jury consideration one of the defendant's principal defenses, and violated the court's obligation to instruct the jury on the general principles of law necessary for the jury's understanding of the case.

---

[6]Section 417 then defined the offense commonly referred to as brandishing as follows: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, . . . in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor."

As the People correctly note, this aspect of *Wilson* did not involve a request for instructions that the defendant might be convicted of violating section 417. Nonetheless, the underlying rationale of that decision, and in particular of our holding that the error in failing to instruct the jury on brandishing was prejudicial, fully supports appellant. ■ Implicit in the conclusion that the error was prejudicial is our recognition that where the defense is that the defendant has committed an offense other than that on which the prosecution case is predicated, and he has presented evidence which if believed supports his theory, reliability in the factfinding process demands that the jury be instructed on that offense. Similarly, reliability of the factfinding process demands affording the jury the "third option" when the evidence supports a conviction of a related, but not necessarily included, offense.

Reliance on the strict statutory elements approach to defining those offenses of which a defendant might be convicted was abandoned by this court more than 25 years ago in *People* v. *Marshall* (1957) 48 Cal.2d 394, 405 [309 P.2d 456], where we first approved conviction of a related, but not necessarily included, offense, and noted that a defendant had a right to instructions on related offenses. There we recognized that the statutory elements approach to identification of lesser offenses was unnecessary and did not further any justifiable purpose when the defendant's due process right to notice is not compromised. In *Marshall,* the defendant was charged with robbery in violation of section 211 in an information which alleged that he did " 'forcibly take from the person and immediate presence of Jack J. Martens . . . Seventy Dollars . . . and an automobile.' " (48 Cal.2d at p. 396.) He waived jury trial, was convicted of auto theft in violation of section 503, as a necessarily included offense, and appealed claiming that violation of section 503 was not necessarily included within robbery, the charged offense. We held that because the prosecutor charged the offense in language which described a related lesser offense, and the defendant thus had notice that he might be convicted of the related offense, it was not error for the court to convict him of the lesser offense even though it did not come within the statutory elements test of a necessarily included offense. In adopting that test for "included offenses," we were persuaded by "considerations of fairness to both parties" (48 Cal.2d at p. 405) and noted that had the trial been before a jury both parties could have and should have been prepared to request instructions on the lesser offense.

If the information in this case had described the means by which the burglary was perpetrated, *Marshall* would have required instructions on vandalism. To deny a defendant that right because the prosecutor chose to charge the offense in general, conclusory terms seems anomalous.[7]

---

[7] It is particularly so in light of our observation in *Marshall* that "a pleading which forth-

We have repeatedly recognized the defendant's right to have the jury or court determine every material issue presented by the evidence. Denial of instructions on related offenses may affect the reliability of that fact finding process. By affording no option other than acquittal or conviction of a greater offense than that which the jury believes to have been committed, denial of instructions on related offenses may in some cases create a "substantial risk that the jury's practice will diverge from theory" (*Keeble* v. *United States, supra,* 412 U.S. 205, 212 [36 L.Ed.2d 844, 850]) and thereby undermine the reasonable doubt standard. ■ Therefore, in the absence of substantial countervailing considerations justifying continuation of the rule that instructions need be given only on included offenses, due process requires that instructions on related offenses be given on request of the defendant in appropriate circumstances.

## IV.

The principal impediment to instructions on related, but not necessarily included, offenses is the defendant's right to notice adequate to permit him to prepare his defense. That right is not a concern, however, when a defendant requests conviction of a related offense. ■ A defendant may not be "convicted of an offense which is neither specifically charged in the accusatory pleading nor 'necessarily included' within a charged offense, *when he does not consent to the substituted charge. . . .* " ' 'Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." [Citation.]' " (*People* v. *Lohbauer, supra,* 29 Cal.3d 364, 367-368, italics added.)

Where, however, the defendant himself requests the instruction on a related offense there is no constitutional bar. Obviously, such a defendant cannot claim lack of notice. (*People* v. *West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409]; *People* v. *Ramos* (1972) 25 Cal.App.3d 529, 539 [101 Cal.Rptr. 230].)

Nor can it reasonably be contended that such an instruction is barred by some abstract notion of "mutuality," stemming from the limitations upon the prosecutor in such a situation. That the prosecutor is not entitled to obtain a conviction on a charge of which the defendant lacks notice provides no basis, in logic or justice, for depriving a defendant of instructions on a

---

rightly alleges not only the statutory language of the greatest offense charged, but also known details as to the manner of its commission is more helpful to a defendant, particularly if he is innocent, and is more fair and, hence, more worthy of the proper stature of the state's attorney than a pleading which alleges the general statutory language and no more." (*People* v. *Marshall, supra,* 48 Cal.2d 394, 407.)

charge at his request. As the federal court put it in *Whitaker*, where justice requires the option of conviction of a related offense, "considerations of justice and good judicial administration warrant dispensing with mutuality as an essential prerequisite to the defense's right to a lesser included offense charge. [¶] The defense ought not to be restricted by the stringent constitutional limits upon the prosecutor's right." (*United States* v. *Whitaker, supra,* 447 F.2d 314, 321; see also *Keeble* v. *United States, supra,* 412 U.S. 205, 214, fn. 14 [36 L.Ed.2d 844, 851].)

The People suggest that instructions on related offenses would be contrary to or inconsistent with several statutory provisions governing the conduct of criminal trials. If that were true, the defendant's right to due process would require consideration of the validity of those statutes. ■ However, we find no inconsistency between existing statutory provisions governing instructions in criminal cases and a defendant's right to request additional instructions on related offenses, and no violation of legislative intent in the adoption of the other provisions to which our attention has been called by the People.

■ Section 1155, subdivision 1,[8] and section 1159[9] permit conviction of lesser included offenses, but do not preclude conviction of a related offense when the defendant consents to that procedure. *People* v. *Lohbauer, supra,* 29 Cal.3d 364, 367, held only that section 1159 limited the power of a trier of fact to find a defendant guilty of a related but not necessarily included offense when the defendant did not consent to a conviction of a substituted charge. These, and other provisions of the Penal Code which govern pleading of offenses (see, e.g., §§ 950, 952), ensure that the defendant receives the notice which he is guaranteed by the Sixth and Fourteenth Amendments (see *People* v. *West, supra,* 3 Cal.3d 595, 612; *In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5]), but they in no way restrict the court's power to instruct on related offenses or in a nonjury trial to convict of a related but not necessarily included offense on request by the defendant.[10]

---

[8]Subdivision 1 of section 1155 provides: "If the plea is not guilty, and the facts prove the defendant guilty of the offense charged in the indictment or information, or of any other offense of which he could be convicted under that indictment or information, judgment must be given accordingly. But if otherwise, judgment of acquittal must be given."

[9]Section 1159 provides: "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

[10]As indicated in *People* v. *Marshall, supra,* 48 Cal.2d 394, although we are concerned here only with alleged error in failing to instruct on a related, but not necessarily included offense, our reasoning and holding are equally applicable to nonjury trials in which a defendant waives his right to notice by consenting to consideration of a related offense.

The People argue that permitting a jury or judge to convict a defendant of a related, but not necessarily included offense would conflict with other sections of the Penal Code. They call our attention to section 1009 which permits amendment of an indictment or information in specified circumstances. ■ When the defendant acquiesces in conviction of an uncharged offense, however, no amendment is necessary. (*People* v. *West* (1970) 3 Cal.3d 595, 612-613 [91 Cal.Rptr. 385, 477 P.2d 409].) Although this court recognized in *West* and in *People* v. *Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193], that a guilty plea to an uncharged offense was permissible only with the acquiescence of the prosecutor, that rule is inapplicable when the prosecutor has had the opportunity to present evidence and argument to the trier of fact at trial.[11] The People are deprived of no statutory or constitutional right when, after being afforded that opportunity, the trier of fact concludes that they have not proven the charged offense beyond a reasonable doubt and elects to convict the defendant of a related offense rather than acquitting the defendant who is, after all, guilty of the related offense. *People* v. *Serrato* (1973) 9 Cal.3d 753 [109 Cal.Rptr. 65, 512 P.2d 289], is not contrary. There we held that the court had no authority to convict the defendant of an uncharged crime "without his consent." (*Id.*, at p. 759.) We noted there that the record contained no evidence of consent.

The People also argue that because section 1385 permits a court to dismiss charges, but does not provide corresponding authority to file additional charges, the trier of fact may not convict a defendant of an uncharged, related offense. The charging functions of the prosecutor are not involved at the time a verdict must be reached. The only action to be taken, and question to be resolved, at this stage of the proceedings is the determination of guilt or innocence of the charged offense or any lesser or related offense that the prosecution has proved. No new charges are filed, and there is no dismissal of any charge. ■ The conviction of a related offense constitutes an acquittal of the charged offense. (*People* v. *Serrato, supra,* 9 Cal.3d 753, 762; *In re Hess* (1955) 45 Cal.2d 171, 176 [288 P.2d 5].) The absence of statutory authority for instructions on or conviction of a related but not necessarily included offense does not, therefore, suggest a legislative intent to preclude conviction of related offenses, and we need not look for a state interest in that omission adequate to justify denial of the right. Sections 1155 and 1159, in fact, support a conclusion that the option to convict of a related offense is consistent with the legislative intent in providing for conviction of included offenses.

---

[11]This observation is also dispositive of the People's argument that permitting conviction of a related offense is inconsistent with sections 1192.1 through 1192.5. Those provisions govern only the acceptance of pleas of guilty and have no application after trial in the determination of guilt or innocence.

The lesser included offense doctrine developed originally to benefit the prosecution by permitting conviction of a lesser offense when there was a failure of proof as to the charged offense. (See *United States* v. *Whitaker, supra,* 447 F.2d 314, 321, fn. 19; *Fuller* v. *United States* (D.C. Cir. 1968) 407 F.2d 1199, 1230, fn. 40; *Kelly* v. *United States* (D.C. Cir. 1966) 370 F.2d 227.) It is clear, however, that sections 1155 and 1159 were not intended to benefit the prosecution alone. Juries have been permitted to convict a defendant of a lesser included offense since the adoption of the Act Regulating Proceedings in Criminal Cases in 1850. Section 456 of that act provides that "[i]n all cases the defendant may be found guilty of any offence, the commission of which is necessarily included in that with which he is charged in the indictment. . . ." (Stats. 1850, ch. 119, § 456, p. 308.) Trial courts were required by that act to instruct the jury on request by either party. (*Id.,* § 392, p. 303.) An error in instructions which precluded conviction of a lesser offense was recognized as a basis for reversal under those provisions (*People* v. *King* (1865) 27 Cal. 507, 512-513), and under the provisions of the Penal Code of 1872 which supplanted them. (*People* v. *Comyns* (1896) 114 Cal. 107, 111-112 [45 P. 1034]; *People* v. *Stofer* (1906) 3 Cal.App. 416, 418 [86 P. 734].) Thus, in California, the lesser offense doctrine has long been recognized as one intended to benefit both the defense and the prosecution.

The People also claim that permitting instructions on and conviction of a related offense will give the defendant the right to determine the charge and thus exercise a power belonging exclusively to the prosecution. (*People* v. *West* (1980) 107 Cal.App.3d 987, 993 [165 Cal.Rptr. 24].) If that were so, the defendant's due process right to the instructions might conflict with article III, section 1, and article IV, section 13, of the California Constitution. The People's reliance on *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255, 262-263 [137 Cal.Rptr. 476, 561 P.2d 1164], for this proposition is misplaced, however. In *Greer* this court did recognize that the "function of determining which persons are to be charged with what criminal offenses" is that of the executive branch. In *Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 148 [137 Cal.Rptr. 14, 560 P.2d 1193], we recognized this allocation of responsibility and held that the courts may not interfere with this area of executive discretion. But we also held in *Greer* that an exercise of judicial power to recuse a prosecutor who had a conflict of interest did not conflict with the prosecutor's exercise of powers granted to the executive branch. We noted that "once the state is ready to present its case in a judicial setting 'the prosecutorial die has long since been cast.' [Citation.] In rejecting separation of powers claims similar to those raised here, we have frequently noted that 'When the decision to prosecute has been made, the process which leads to acquittal or sentencing is fundamentally judicial in nature.' (*People* v. *Tenorio* (1970), *supra,* 3 Cal.3d 89, 94

[89 Cal.Rptr. 249, 473 P.2d 993]; *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 127 [95 Cal.Rptr. 524, 485 P.2d 1140]; *People* v. *Superior Court (On Tai Ho), supra,* 11 Cal.3d at p. 65 [113 Cal.Rptr. 21, 520 P.2d 405].)" (19 Cal.3d at p. 263.)

█    The prosecutor's power to decide whether to prosecute, and on what charges, is unimpaired when instructions on related offenses are permitted in the limited circumstances we consider here. Instructing a jury and determining the defendant's guilt or innocence of the charges brought by the prosecutor occur only after the prosecutor has been afforded full opportunity to exercise his charging powers. These functions are exclusively judicial in nature. The prosecutor's exercise of discretion in charging an offense while foregoing prosecution of a lesser related offense cannot foreclose the court's authority to permit the jury to consider the lesser related offense if the evidence presented by the prosecutor shows commission of the lesser offense, but not necessarily the greater. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390].) Therefore, the conflict perceived by the People has no substance.

Finally, there is no basis for the People's concern that at some later date a failure to give instructions on related offenses *sua sponte* will be held to be error.   █    Since *sua sponte* instructions would conflict with the defendant's right to notice of the charges, there is no obligation to instruct on related offenses in the absence of a request by the defendant for such instructions.

None of the arguments put forth by the People suggests that the state has an interest in denying instructions on related offenses of sufficient importance to outweigh a defendant's due process right to have such instructions on request when warranted by the evidence at trial.

## V.

While we conclude that fairness to the defendant requires that the defendant receive instructions on related but not necessarily included offenses, we emphasize that the benefit of such instructions does not run only to the defendant. (*People* v. *Marshall, supra,* 48 Cal.2d 394, 405.) Just as the lesser included offense doctrine serves the interests of the People by permitting conviction of a lesser offense rather than acquittal of a clearly guilty defendant when the prosecution fails to prove the charged offense, instructions on related offenses will ensure that some guilty defendants who would otherwise go free will be punished for a crime which they committed even though it was overlooked by a prosecutor or was not charged because the prosecutor overestimated the strength of the People's evidence.

It remains to define the circumstances in which a defendant is entitled to instructions on related, but not necessarily included, offenses. In the context of instructions on included offenses we have held that a defendant is not entitled to instructions on related offenses in any case in which there is no basis on which the jury could find that the offense was less than that charged. (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 323-324.) We recognize the possibility that a jury may choose to believe or disbelieve any or all of the People's evidence, and a defendant's right to instructions does not turn on the court's assessment of the strength of the evidence, or on whether there is a conflict in, rebuttal to, or impeachment of the People's evidence. (See *People* v. *Chambliss, supra,* 236 N.W.2d 473, 480.) Nevertheless, where there is no evidence that the offense is less than or other than that charged and instructions need not be given on lesser included offenses, they need not be given on lesser related offenses. If the jury disbelieves the People's evidence in these cases, there is no incentive to convict and no conflict with the right to a reliable factfinding process. ▇▇▇ Therefore, the first prerequisite to receiving instructions on lesser related offenses must be the existence of some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged.

Second, the offense must be one closely related to that charged and shown by the evidence. The District of Columbia Circuit and the courts adopting the *Whitaker* approach have limited instructions to those on offenses having an "inherent relationship" with the charged offense in order to prevent "abuse" by defendants seeking to appeal to the jury's sense of mercy by requesting instructions on every offense that is arguably shown by the evidence. We agree that the right to instructions on related offenses is not without limit. The purpose of the rule, however, serves to define its limits. ▇▇▇ The right to instructions on related offenses exists only to enable the jury to determine fairly the issues presented by the evidence and in so doing to avoid any incentive to convict the defendant of a greater offense than that which he committed. The issues presented by the evidence are those related first to the defendant's guilt or innocence of the charged offense. Although some evidence offered by the People or the defendant may indicate that the defendant has committed a crime other than that charged, instructions regarding that crime need not be given unless the evidence is also relevant to and admitted for the purpose of establishing whether the defendant is guilty of the charged offense.

▇▇▇ Finally, the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability as when the defense is

alibi, or the only issue is identity, unless the defendant argues that the evidence at most shows guilt only of the related offense.[12]

## Conclusion

Having thus concluded that in the described circumstances a defendant is entitled to instructions on a related, but not necessarily included offense, we must determine whether this defendant's request should have been granted. ▇▇▇ We conclude that denial of the request was error. There was a basis for claiming an arguable defect of proof as to the intent necessary for a conviction of either burglary, or attempted burglary. The offense of vandalism is related to burglary since it is made an offense to protect the same societal interest—security of property—as burglary. It is often proven by the evidence that is offered to prove burglary. The defense evidence and theory here were consistent with the commission of vandalism and with an acquittal of burglary. The testimony of the owner of the Dragon Moon Disco, and the evidence that nothing in Jack's was taken or disturbed, both of which were admitted for the purpose of establishing defendant's guilt or innocence of the charged offense, were sufficient to create a genuine conflict as to defendant's intent when he, concededly, broke the window.

Failure to give the requested instruction requires reversal of the judgment. The factual question that would have been posed by the instruction—whether defendant broke the window and caused the damage for reasons other than theft of property inside the restaurant—was not necessarily resolved adversely to defendant. The only option given to the jury was a conviction of burglary or an acquittal. There was no finding necessarily made in another context that would permit a conclusion that defendant's evidence and his theory of the case were necessarily rejected by the jury. (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 336; cf. *People* v. *Sedeno, supra,* 10 Cal.3d 703, 721.)[13]

The judgment is reversed.

---

[12]We cannot, of course, anticipate all of the varied circumstances in which instructions on related offenses may be requested. We do not foreclose the possibility that experience will teach that these criteria are over- or underinclusive. In doubtful situations, however, the determinative factor should be whether the option to convict a defendant of a related offense is reasonably necessary to insure that the jury is afforded the opportunity to decide all material issues presented by the evidence in accord with the defendant's theory of the case, where denial of that opportunity might undermine the reasonable doubt standard.

[13]Because the purpose of instructing on related offenses is primarily prophylactic, although we follow past practice in extending the benefits to the defendant before the court (see, e.g., *People* v. *Yates* (1983) 34 Cal.3d 644 [194 Cal.Rptr. 765, 669 P.2d 1]; *People* v. *Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130]), it shall otherwise apply only to cases in which a trial or retrial commenced after this decision becomes final.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

**RICHARDSON, J.**—I respectfully dissent.

Although obvious benefits will accrue to the criminal defendant by reason of the majority's new rule, the fact remains that its holding may well result in a massive interference with, and erosion of, the prosecutor's discretionary function to select the offenses of which the defendant may be charged and convicted. Moreover, I find no constitutional or statutory basis for affording the defendant the right to jury instructions regarding lesser offenses which are not necessarily included within the charged offense. (See Pen. Code, § 1159 [permitting conviction of "necessarily included" offenses].)

Justice Feinberg expressed my views with his words in *People* v. *West* (1980) 107 Cal.App.3d 987, 993 [165 Cal.Rptr. 24], "To hold that a defendant can require that a jury be told that he can be convicted of crime X when he has been charged with crime Y, a charge that does not necessarily include crime X, is to hold that the defendant, in effect, has the power to determine what crime he is charged with, *a power that resides exclusively with the prosecution.*" (Italics added; accord, *People* v. *Gutierrez* (1982) 137 Cal.App.3d 542, 548-549 [187 Cal.Rptr. 130].)

In addition to interfering with the prosecutorial function, I foresee that the majority's new rule may well be quite difficult to apply. Justice Wiener in *Gutierrez* observed that "There are no . . . definitions or limitations with respect to offenses which are not 'necessarily included' to effectively guide the trial court in deciding whether to give the requested instruction. We will not add an additional trial court requirement which may well frustrate, rather than contribute to the administration of justice." (P. 549.)

The majority attempts to set guidelines for determining under what circumstances additional instructions are required, but these guidelines are too imprecise and broad to be of much value (requiring, as they do, that "some basis" exists for finding the uncharged offense was committed; that the uncharged offense be "closely related" to the charged offense; and that defendant has "relied" at trial on a defense "consistent" with a conviction on the uncharged offense). Predictably, trial judges and juries alike will have great difficulty applying the majority's vague and uncertain standards.

Until today, no California case had suggested that instructions on related but nonincluded offenses are constitutionally mandated. Moreover, thus far, the United States Supreme Court has required, as a matter of due process, instructions only on *included* lesser offenses, and has limited that require-

ment to *capital* cases. (*Beck* v. *Alabama* (1979) 447 U.S. 625, 638-643 [65 L.Ed.2d 392, 403-406, 100 S.Ct. 2382].) In my view, allowing defendants to demand instructions on nonincluded lesser offenses will generate unsound compromise verdicts which nullify the prosecutor's right and responsibility to charge the offense or offenses he deems appropriate under his view of the evidence.

Upholding the prosecutor's traditional charging authority will not result in unfair prejudice to the defendant. Our justice system has for generations operated on the assumption that a properly instructed jury will simply acquit a defendant if it finds the evidence insufficient to support the prosecutor's theory of the case.

I would affirm the judgment.

Respondent's petition for a rehearing was denied February 29, 1984.