[No. A055978. First Dist., Div. Three. Oct. 26, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL ANTHONY ARAUJO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—Appellant Paul Anthony Araujo was convicted by a jury of one count of first degree burglary. (Pen. Code, §§ 459, 460, former subd. 1.)[1] He appeals from the judgment of conviction. We affirm.

I

The following events occurred during the week of Thanksgiving in 1990. They concern the Vega family which, at the time, resided in Oakley. The Vegas decided to go to Reno for the holiday. On Tuesday, November 20, Manuel Vega was packing his car for the trip when he noticed 18-year-old appellant, who lived across the street, standing in the doorway of his home apparently watching him. Not long after this, Vega saw appellant standing at a second-story window of his home, again looking in his direction.

The Vegas started on their trip around 10 o'clock that morning. Before leaving, they made sure that all doors and windows of their house were locked. They left a Ford Courier pickup parked in front of the house. The keys to the vehicle were in the house.

When the Vegas returned the following Friday, they discovered that their house had been broken into and that various personal belongings were missing. These included: a portable telephone, house and vehicle keys, some jewelry, a vase filled with dimes, a purse, and a leather jacket belonging to Vega's wife.

The house was in disarray. Clothes were strewn on the floor of the master bedroom closet. A refrigerator in the master bedroom was damaged. There were cigarette butts in a kitchen ashtray that had been left clean and beer cans in the kitchen sink. The Vegas found the window in their daughter's bedroom and the garage door unlocked.

Finally, there was evidence that the Ford pickup had been driven. The truck was parked in a slightly different position. Its doors were unlocked and the antenna raised. There were sunflower seeds on the front seat and the seat had been adjusted. Brake fluid was leaking from underneath the truck.

Thereafter, the Vegas received a telephone bill which included charges for three telephone calls to an unfamiliar number in Valley Springs, California. The calls were made between 8 and 9:30 p.m. on November 20 when the Vegas were in Reno. The number was traced to the vacation home of the parents of appellant's friend Daniel Amerson.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

The prosecution's evidence at trial included the testimony of Joseph Ybarra, who lived in the same neighborhood as the Vegas and appellant. According to Ybarra, he saw appellant coming out of the side gate of the Vegas' yard within two or three hours after the family had left on its trip. Ybarra said he made eye contact with appellant who "froze in his tracks." Appellant acted like he was talking to someone behind the fence. However, Ybarra said he knew that no one was home at the Vegas' house.

Colleen Hasenpusch and Daniel Amerson testified that they were staying at Amerson's parents' vacation home in Valley Springs during Thanksgiving week. Appellant telephoned them during that time. He then showed up at the vacation home with two people, one by the name of "Chandelle" and one who went by the nickname "Elvis." According to Hasenpusch, appellant drove up in a pickup that matched the description of the one belonging to the Vegas. Chandelle removed a bag from the pickup and brought it into the house. The bag contained stolen property from the Vegas' residence including the leather jacket.

Evidence presented by the defense included the testimony of Jennifer Herrera, a former girlfriend of Jeff Rice, the youth nicknamed "Elvis." Herrera said that she received a telephone call from Elvis around 10 p.m. two or three days before Thanksgiving. The Vegas' telephone bill reflected this call as well.

II

At trial, defense counsel sought but was refused a jury instruction on joyriding (§ 499b) as a lesser related offense. Appellant claims reversible error based on the trial court's refusal to so instruct. Appellant's argument is unpersuasive.

In *People* v. *Geiger* (1984) 35 Cal.3d 510 [674 P.2d 1303, 50 A.L.R.4th 1055], the Supreme Court enunciated three prerequisites for instructions on related, but not necessarily included, offenses. First, there must be "some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." (*Id.*, at p. 531.) Second, "the offense must be one closely related to that charged and shown by the evidence." (*Ibid.*) Third, "the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense." (*Id.*, at pp. 531-532.)

In explaining the second requirement that the lesser offense be closely related to that charged and shown by the evidence, the *Geiger* court said:

"We agree that the right to instructions on related offenses is not without limit. The purpose of the rule, however, serves to define its limits. The right to instructions on related offenses exists only to enable the jury to determine fairly the issues presented by the evidence and in so doing to avoid any incentive to convict the defendant of a greater offense than that which he committed. The issues presented by the evidence are those related first to the defendant's guilt or innocence of the charged offense. Although some evidence offered by the People or the defendant may indicate that the defendant has committed a crime other than that charged, instructions regarding that crime need not be given unless the evidence is also relevant to and admitted for the purpose of establishing whether the defendant is guilty of the charged offense." (*People* v. *Geiger, supra*, 35 Cal.3d at p. 531.)

In *Geiger*, the charged offense was burglary. Given the state of the evidence in that case, the high court determined that vandalism was a lesser related offense and that the trial court erred in refusing to give an instruction on the lesser offense. The Supreme Court said: "We conclude that denial of the request was error. There was a basis for claiming an arguable defect of proof as to the intent necessary for a conviction of either burglary, or attempted burglary. The offense of vandalism is related to burglary since it is made an offense to protect the same societal interest—security of property —as burglary. It is often proven by the evidence that is offered to prove burglary. The defense evidence and theory here were consistent with the commission of vandalism and with an acquittal of burglary." (*People* v. *Geiger, supra*, 35 Cal.3d 510, 532.)

In the case at bar, the trial court did not err in refusing to give an instruction on joyriding because joyriding is not a lesser related offense of the charged offense of residential burglary, either in theory or in the context of the evidence presented. The elements of the two offenses are entirely different[2] as are the societal interests they serve (residential/first degree burglary statute is primarily aimed at protecting personal safety [see *People* v. *Gauze* (1975) 15 Cal.3d 709, 715 (125 Cal.Rptr. 773, 542 P.2d 1365)] whereas the joyriding provision is aimed strictly at protecting one's automobile). More importantly, the facts in the case which would be supportive of a finding of either offense are entirely different, occurring as they do at different points in time. (Cf. *People* v. *Randle* (1992) 8 Cal.App.4th 1023 [10 Cal.Rptr.2d 804].) There is no concern here of the type voiced by *Geiger*—

[2]The elements of first degree burglary with which we are concerned are the entry into a residence with the specific intent to steal, take and carry away the personal property of another, coupled with the specific intent to deprive the owner of said property permanently; the elements of misdemeanor joyriding, on the other hand, are the taking of an automobile without its owner's permission with the specific intent to temporarily take and use it.

i.e., that had the jury received an instruction on joyriding, it might have convicted appellant of that offense instead of residential burglary, based on the same set of facts.

It is true that the prosecution used evidence of the joyriding episode for purposes of proving residential burglary. Appellant's act in driving the Vegas' pickup truck to Valley Springs served to link him with the burglary because the truck's keys had been left by the Vegas inside their house and because one of the people accompanying him was in possession of some of the stolen property. However, these aspects of the joyriding incident relate to the burglary only circumstantially and not in any direct way. (Compare with *People* v. *Geiger, supra*, 35 Cal.3d 510, 531-532 [vandalism as lesser related offense of burglary]; *People* v. *Woods* (1991) 226 Cal.App.3d 1037, 1050-1053 [277 Cal.Rptr. 269] [assault with a deadly weapon as lesser related offense of attempted murder]; and *People* v. *Santos* (1990) 222 Cal.App.3d 723, 738-741 [271 Cal.Rptr. 811] [battery as lesser related offense of lewd or lascivious acts on a child].)

Accordingly, we find no error in the trial court's refusal to instruct on joyriding.

### III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### V

The judgment is affirmed.

White, P. J., and Chin, J., concurred.

*See footnote, *ante*, page 700.