[No. B039837. Second Dist., Div. Five. Dec. 10, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMY LEONARD BALLARD, Defendant and Appellant.

[No. B061209. Second Dist., Div. Five. Dec. 10, 1991.]

In re JIMMY LEONARD BALLARD on Habeas Corpus.

**COUNSEL**

Scott L. Fielder, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Edward T. Fogel, Jr., and Carol Wendelin Pollack, Assistant Attorneys General, William T. Harter, Elaine F. Tumonis and Peggy S. Ruffra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ASHBY, Acting P. J.—By jury trial appellant Jimmy Leonard Ballard was convicted of first degree murder. (Pen. Code, § 187.) The jury also found true that a principal in the offense was armed with a firearm. (Pen. Code, § 12022, subd. (a).) Appellant was sentenced to state prison for 25 years to life plus 1 year pursuant to section 12022, subdivision (a).

The conviction was based on the felony murder rule, the killing having occurred during the commission of a robbery. Appellant planned and participated in the robbery, during which the victim was shot and killed by appellant's accomplice, Freddie Catchings. The victim was Yvette Robinson, a woman with whom appellant had lived. Appellant was aware that Robinson sold cocaine and kept money and drugs in a safe in her apartment. Appellant and Freddie Catchings, after obtaining a gun from George Williams, planned for appellant to arrange a feigned drug transaction between Catchings and the victim. They planned to rob her at gunpoint of the cocaine she would bring with her, then rob her of her keys and take money and drugs from her apartment. Appellant contacted the victim and arranged the meeting. Once the parties arrived at the location and the robbery was committed, Catchings shot the victim twice, killing her.

The victim's three-year-old daughter, who had accompanied her mother, told the police of "Uncle Jimmy's" presence at the scene. When initially

questioned by the police, and again in his testimony at trial, appellant claimed he did nothing but arrange a drug transaction, was surprised when a robbery occurred and fled the scene before the shots were fired. When confronted by the police with incriminating statements by George Williams, however, and a police claim that appellant's fingerprints were found in Williams's car, appellant sank down in his chair, said "Okay, look, this is what happened" and voluntarily confessed to the robbery scheme. In addition, appellant twice told a jailhouse informant of his planning and participating in the robbery.

On appeal, appellant contends (1) the trial court erred in failing to instruct on second degree felony murder based on sale of cocaine and (2) the trial court prejudicially erred in instructing under CALJIC No. 2.62 regarding adverse inferences from appellant's testimony. Finding no merit to these contentions, we affirm. On petition for writ of habeas corpus, appellant-petitioner contends the prosecution suppressed material evidence relevant to the credibility of the jailhouse informant. Finding the failure to disclose material evidence was harmless beyond a reasonable doubt, we deny the petition.

## SECOND DEGREE FELONY MURDER

█ First degree felony murder consists of an unlawful killing, intentional or otherwise, committed in the course of one of the felonies specified in Penal Code section 189. Robbery is one of the specified felonies, and the prosecution theory at appellant's trial was solely that appellant was guilty of first degree felony murder committed in the course of robbery.

Second degree felony murder consists of a homicide that is a direct causal result of the commission of "an inherently dangerous felony" other than the felonies listed in section 189. (*People* v. *Patterson* (1989) 49 Cal.3d 615, 620 [262 Cal.Rptr. 195, 778 P.2d 549]; *People* v. *Cline* (1969) 270 Cal.App.2d 328, 330-331 [75 Cal.Rptr. 459, 32 A.L.R.3d 582].)

█ Appellant contends the trial court should have instructed that appellant could be convicted of second degree felony murder on the theory that sale of cocaine is an inherently dangerous felony. There is no merit to this contention. Appellant misplaces reliance on cases where the homicide victim died as a result of ingesting illegal drugs which had been furnished or sold.[1] Here the victim did not die as a causal result of a sale and ingestion of cocaine. The victim died from gunshots because the transaction was a

---

[1] *People* v. *Taylor* (1970) 11 Cal.App.3d 57, 58, 59 [89 Cal.Rptr. 697]; *People* v. *Taylor* (1980) 112 Cal.App.3d 348, 354-355, 357-359 [169 Cal.Rptr. 290]; *People* v. *Cline, supra,* 270 Cal.App.2d at pages 331-334.

robbery not a sale. There was no direct causal relationship between the death and the offense of sale of cocaine. (*People* v. *Patterson, supra,* 49 Cal.3d at p. 620; *People* v. *Ford* (1964) 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892].) Either appellant was guilty of first degree murder for a homicide committed during a robbery, or he was not guilty at all under his theory that he merely arranged a drug sale and had no idea a robbery would occur. The trial court properly concluded there was no basis in the evidence for instruction on second degree murder. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Geiger* (1984) 35 Cal.3d 510, 531 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].)

## CALJIC No. 2.62

■ The trial court instructed the jury in the language of CALJIC No. 2.62 that the jury may draw an adverse inference from appellant's failure in his testimony to explain or deny evidence against him.[2] Appellant contends that his testimony *did* either explain or deny the evidence against him, therefore this instruction should not have been given.[3]

Assuming this instruction should not have been given, any error was not prejudicial. CALJIC No. 2.62 does not direct the jury to draw an adverse inference. It applies only if the jury finds that the defendant failed to explain or deny evidence. It contains other portions favorable to the defense (suggesting when it would be unreasonable to draw the inference; and cautioning that the failure to deny or explain evidence does not create a presumption of guilt, or by itself warrant an inference of guilt, nor relieve the prosecution of the burden of proving every essential element of the crime beyond a reasonable doubt). It is not reasonably probable a more favorable verdict

---

[2]This instruction provided: "In this case defendant has testified to certain matters. [¶] If you find that he failed to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that mong [*sic*] the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable. [¶] In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. [¶] The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

[3]Appellant explained his confession by testifying he merely told the police what they wanted to hear because he thought he would be released in light of his cooperation as a witness to the shooting by Catchings. He admitted that his initial statement to police was not candid, since it did not name Catchings. At trial he reiterated his initial statement that he set up a drug transaction with two other individuals he did not wish to name.

would have resulted if the instruction had not been given. (*People* v. *Saddler* (1979) 24 Cal.3d 671, 683-684 [156 Cal.Rptr. 871, 597 P.2d 130]; *People* v. *Marsh* (1985) 175 Cal.App.3d 987, 994 [221 Cal.Rptr. 311]; *People* v. *Ramirez* (1980) 109 Cal.App.3d 529, 544 [167 Cal.Rptr. 174].)

## HABEAS CORPUS[4]

At trial a jailhouse informant, Alfred Montes, testified that on two occasions in jail appellant told Montes about appellant's involvement in planning to rob the victim.

■ In a petition for writ of habeas corpus, appellant alleges that despite appellant's discovery request for information about all prosecution witnesses, the prosecution failed to disclose information available to the district attorney's office concerning previous activity by Montes as a jailhouse "snitch."

During pendency of this appeal, appellate counsel reviewed files in the Los Angeles District Attorney's Office relating to Montes and discovered information about three prior cases in which Montes provided information to the prosecution: (1) In 1981, Montes was an informant in a murder case (Morgan) and in return for truthful testimony was offered a plea bargain permitting Montes to plead guilty to three out of seven counts of burglary. (2) In 1985, Montes was a witness in a murder trial (Cummings and Gilbert). A deputy district attorney's memo described Montes as having contacted authorities in order to exchange information for favorable treatment. (3) In 1984, Montes told investigators that a murder suspect (Reed) admitted to Montes, in the chow hall of the jail, Reed's involvement in the murder. Another jailhouse informant, Homer Lewis, claimed to the contrary in an unsworn statement. Lewis claimed that Reed had made these statements to him, on the row and not in the chow hall; Lewis claimed that Lewis, Montes, and a third jailhouse informant agreed to claim Reed's statement was made to them in the chow hall, so that Montes and the third informant could also make a deal. The district attorney's office agreed to let Reed plead guilty to voluntary manslaughter, in part because the prosecution case rested entirely on jailhouse informants, whose credibility was weak, especially in light of Homer Lewis's claim. Thus Montes did not actually testify in the Reed case.

Appellant's trial counsel declared that this information was not provided to him by the prosecution and that it would have been helpful in impeaching Montes during appellant's trial.

---

[4]For simplicity and consistency we continue the reference to "appellant," recognizing that as to the habeas corpus petition he is technically "petitioner."

The intentional suppression of substantial material evidence bearing on the credibility of a key prosecution witness is a violation of due process. (*People* v. *Ruthford* (1975) 14 Cal.3d 399, 408 [121 Cal.Rptr. 261, 534 P.2d 1341]; *In re Ferguson* (1971) 5 Cal.3d 525, 532 [96 Cal.Rptr. 594, 487 P.2d 1234].) A new trial is not required, however, if the failure to disclose was harmless beyond a reasonable doubt. (*People* v. *Ruthford, supra,* 14 Cal.3d at pp. 408-409.) Assuming that the file on Montes's past activity, which was available to the district attorney's office, should be treated as having been intentionally suppressed, appellant is nevertheless not entitled to habeas corpus relief because the failure to disclose was harmless beyond a reasonable doubt.

Montes was not a key prosecution witness; he was a last-minute rebuttal witness. The prosecution case in chief included a tape-recorded confession by appellant to police. Appellant originally told the police he merely arranged a drug sale and had no idea a robbery would occur. The police then confronted appellant with a statement by George Williams which implicated appellant; they also (falsely) told appellant his fingerprint had been found in George Williams's car. When confronted with this evidence, appellant sank down in his chair, said "Okay, look, this is what happened" and told police about the robbery scheme.

Although at trial appellant attempted to explain his confession by stating that he merely told the police what they wanted to hear, the prosecutor forcefully argued to the jury that appellant's claim was incredible. The prosecutor argued appellant's reaction to the police confrontation was natural and truthful, in apparent recognition that the jig was up, and that the tape-recorded confession gave no hint of the police suggesting what appellant should say.

Testimony by Montes as to appellant's jailhouse confessions was thus merely cumulative of appellant's tape-recorded confession to police. The prosecution downplayed the importance of Montes, admitting that Montes was a snitch, a criminal, a crook, and a burglar.[5]

Even without the information from the district attorney's files, appellant's trial counsel thoroughly and effectively cross-examined Montes about his

___

[5]Citing the reporter's transcript (page 554), appellant argues the prosecutor told the jury "the statement that Mr. Montes made was really the crux of the case." This contention takes the prosecutor's remark completely out of context. In the three preceding pages of reporter's transcript the prosecutor repeatedly emphasized that the People's case was proved by appellant's statements to the police. The prosecutor urged the jury to listen carefully to appellant's tape-recorded confession to the police. The remark about the "statement that Mr. Montes made" did *not* refer to Montes's testimony about appellant's jailhouse statements to Montes; it referred only to a comment by Montes at trial that if appellant had not made a telephone call to the victim Yvette Robinson, none of the parties, including Montes, would have been in

experience as a jailhouse snitch. Montes admitted he was a four-time loser who had been to state prison. He admitted he had informed on other prisoners three times before. He was cross-examined at length about the jailhouse snitch system; he admitted jailhouse informers usually expect to receive some benefit from providing information, even that they sometimes falsify information. During both cross-examination and argument, defense counsel repeatedly ridiculed the suggestion that either in this case or prior cases Montes had provided information without seeking or obtaining some favor or leniency in return.

Under these circumstances Montes's character or motives were thoroughly explored for the benefit of the jury. Although knowledge of Montes's past involvements might have aided defense counsel's impeachment efforts with a few additional details, disclosure of the information would not have resulted in painting "a significantly different picture of [Montes's] character and motives than appears on the record." (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1242 [275 Cal.Rptr. 729, 800 P.2d 1159]; *People* v. *Phillips* (1985) 41 Cal.3d 29, 48-49 [222 Cal.Rptr. 127, 711 P.2d 423].) In light of the strong prosecution case based on appellant's own tape-recorded confession, the cumulative nature of Montes's testimony and the thorough cross-examination as to Montes's character and motives, the failure to disclose district attorney files to the defense was harmless beyond a reasonable doubt. (*People* v. *Ruthford*, *supra*, 14 Cal.3d at pp. 408-409; *People* v. *Gonzalez*, *supra*; *People* v. *Phillips*, *supra*.)[6]

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Boren, J., and Grignon, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 11, 1992.

---

court. The prosecutor merely indicated that the dramatic crux of the case was appellant's luring of the victim to the robbery and her subsequent death.

[6]Appellant also contends the files demonstrated that Montes's trial testimony was "false," and the prosecution had a duty to "correct" it at trial. The Attorney General's response vigorously disputes whether any of Montes's trial statements were shown by the files to be false. It is unnecessary to resolve this dispute since the prosecution's failure to correct was also harmless beyond a reasonable doubt. (See *Giglio* v. *United States* (1972) 405 U.S. 150, 153-154 [31 L.Ed.2d 104, 108-109, 92 S.Ct. 763]; *People* v. *Phillips*, *supra*, 41 Cal.3d at pp. 46, 48.)