Filed 12/5/22  P. v. Jones CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094454 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE012470) |
| v. | |
| MICHAEL TERRELL JONES, | |
| Defendant and Appellant. | |

During a drug deal, amid an exchange of gunfire, defendant Michael Terrell Jones shot and killed Manuel Tellez.  Following a jury trial, defendant was convicted of second degree murder with a personal use of a firearm enhancement and illegally possessing a firearm.  On appeal, defendant contends the trial court prejudicially erred by instructing the jury that:  defendant's flight could demonstrate consciousness of guilt, and the jury could consider defendant's failure to explain or deny adverse evidence in his trial testimony.  We conclude any instructional error was harmless.

1

Defendant also raises sentencing errors. He contends the matter must be remanded for resentencing in light of legislative changes to Penal Code[1] section 1170 made by Senate Bill No. 567 (2021-2022 Reg. Sess.) and the fees imposed under former Government Code section 29550.2 must be vacated in light of the enactment of Assembly Bill No. 1869 (2019-2020 Reg. Sess.). Defendant also claims errors in the abstract of judgment require correction. As to the sentencing claims, we agree with defendant. We will affirm the convictions, vacate the sentence, and remand for resentencing.

## BACKGROUND

Tellez grew and sold marijuana. He agreed to sell defendant approximately three pounds of marijuana. They met in an apartment parking lot. Tellez went with his friend Alejandro Fierros. Defendant went with Kenneth Pack and "Little Money."[2] Both Tellez and defendant went to the meeting armed; Tellez with a Glock 9-millimeter handgun and defendant with a .45-caliber Glock model 21 handgun.

Defendant got in the back of Tellez's van, and after the parties agreed on a price, Little Money went to get scales. As they waited for Little Money to return, Fierros, defendant, Pack, and Tellez smoked some marijuana. Fierros testified while they were smoking, and he was relighting his pipe, he heard gunshots. The first shots were fired by defendant and Tellez immediately returned fire. Defendant admitted he shot and killed Tellez. He claimed, however, Tellez had shot at him first while trying to rob him of his money, and he fired in self-defense.

While the shooting continued, defendant got out of the van and fell to the ground. Pack helped him up and defendant told Pack he had been shot. Defendant dropped the gun and Pack picked it up. Defendant and Pack fled the scene in a Toyota Camry.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Little Money arrived in a separate car from defendant and Pack. According to defendant, Little Money left before the shooting occurred.

Fierros testified Tellez was dead by the time defendant and Pack drove away. Fierros left the scene and called 911. Tellez died of multiple gunshot wounds and was declared dead at the scene.

Defendant sustained multiple gunshot wounds. Defendant drove to a nearby hospital. On the way to the hospital, defendant grabbed the gun from Pack's lap and threw it out the car window near a freeway onramp. He took the money he had been going to use to purchase the marijuana, put it in the center console of the car, and told Pack he could take it. The next day, police officers brought Fierros to the hospital and he identified defendant as the shooter.

Pack left the hospital in the Camry. Defendant called his then-girlfriend Michelle Travis[3] and told her he had been shot. Pack told Michelle where she could pick up the Camry.[4] There was a lot of blood in the Camry and Michelle had the car detailed. Police officers later stopped Michelle while she was driving the Camry and impounded the car. There was no visible blood evidence in the car.

When interviewed by law enforcement officers at the hospital, defendant fabricated a story about the shooting, suggesting he was in a different area, and denied having had a gun. Later, while in custody, defendant spoke in a phone call from the jail, with friends about the gun. They had not been able to find the gun defendant had discarded. Defendant described the location and implored them to find the gun. Based on information from that call, police officers found defendant's handgun in the bushes near a highway onramp. All of the bullets at the scene were fired by either defendant's or Tellez's gun. The bullets that killed Tellez had been fired from defendant's gun.

---

[3] Michelle is now defendant's wife.

[4] Neither defendant nor Pack owned the Camry. The car had been rented by Michelle's aunt.

At trial, defendant admitted he had lied in his interviews with law enforcement and testified he did not remember everything he had said to them, because he was lying. He lied about not having a gun; tried to make the shooting sound like a different shooting; did not reference Michelle but discussed his relationships with other women; and did not identify Pack by name. He never told the officers he had shot Tellez in self-defense. He also testified he had lied to law enforcement officers to protect Tellez and Fierros, because in his lifestyle the "street code" dictated he did not want anyone to go to jail.

Defendant was charged by information with special circumstance first degree murder during an attempted robbery (§§ 187, subd. (a), 190.2, subd. (a)(17); count one), attempted robbery (§§ 664/211; count two), and unlawful possession of a firearm (§ 29800, subd. (a)(1); count three). As to counts one and two, it was further alleged defendant had personally and intentionally discharged a firearm causing death. (§ 12022.53, subd. (d).) The jury found defendant not guilty of first degree murder and not guilty of attempted robbery. The jury found defendant guilty of second degree murder and unlawful possession of a firearm and found true the firearm enhancement allegation attached to count one.

The trial court sentenced defendant to an indeterminate term of 15 years to life for the murder conviction, plus a term of 25 years to life for the firearm enhancement, and a concurrent determinate upper term of three years on the unlawful possession of a firearm.

Defendant timely appealed.[5]

---

[5] Notice of appeal was filed July 13, 2021. Due to delays in the preparation of the record, record augmentation, and multiple extensions of time being granted, the matter was fully briefed on August 24, 2022.

4

DISCUSSION

I

*Jury Instructions*

Defendant contends the trial court erred by instructing the jury that if defendant fled immediately after the crime was committed, that conduct might show consciousness of guilt. (CALCRIM No. 372.) He claims there was not substantial evidence of flight because the evidence showed he drove himself to the hospital for medical treatment for his gunshot wounds, not to avoid arrest. Defendant also claims the trial court erred by instructing the jury that if, in his testimony, defendant had failed to explain or deny any adverse evidence that he could reasonably be expected to have explained or denied, that failure could be considered in evaluating the evidence. (CALCRIM No. 361.) Defendant again claims there is not substantial evidence to support this instruction because, although he may have offered an implausible explanation of adverse evidence, that is not a failure to explain or deny adverse evidence.

The People counter these claims are forfeited because defendant failed to object to these instructions in the trial court. The People also contend there is substantial evidence to support giving both instructions, and any error was harmless.

Initially, defendant acknowledges he did not object to these instructions in the trial court, but contends his instructional claims are cognizable on appeal as they affected his substantial rights. (§ 1259.)

"The rule of forfeiture does not apply . . . if the [jury] instruction was an incorrect statement of the law [citation], or if the instructional error affected the defendant's substantial rights." (*People v. Franco* (2009) 180 Cal.App.4th 713, 719.) "Substantial rights" are equated with errors resulting in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Arredondo* (1975) 52 Cal.App.3d 973, 978.) "Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the

5

extent of ascertaining whether the asserted error would result in prejudice if error it was." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.) Accordingly, we will review the merits of defendant's instructional error claims.

### A. Flight as Consciousness of Guilt

As given in this case, CALCRIM No. 372, states: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

"In general, a flight instruction 'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.' [Citations.]" (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.) Leaving the scene of the crime is not, alone, sufficient to warrant giving the instruction. Rather, the circumstances must suggest the defendant's purpose in leaving is to avoid being observed or arrested. (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.) It is not error to give a flight instruction where the evidence suggests reasons for flight other than consciousness of guilt because the instruction permits the jury to consider alternative explanations for flight and determine which inference is more reasonable. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1152-1153; *People v. Rhodes* (1989) 209 Cal.App.3d 1471, 1477.)

Defendant shot Tellez multiple times at close range. He went back to his car and drove away from the scene. He did not call for help for either himself or Tellez. On his way to the hospital, defendant threw his gun out of the car window so he would not be found with it. He arranged for the bloody car to be taken away from the hospital, and ensured he did not have a large amount of cash on him when he checked in to the hospital. In addition, while at the hospital, he lied to law enforcement officers regarding his presence in the area where the shooting occurred. In their totality, these

6

circumstances were sufficient to permit the jury to consider whether defendant left the crime scene to avoid being observed or arrested. That is all the prosecution was required to establish to warrant the trial court giving the instruction. (*People v. Bonilla, supra*, 41 Cal.4th at p. 328.) We find no error in giving CALCRIM No. 372.

### B. Failure to Explain or Deny Adverse Evidence

The trial court also instructed the jury with CALCRIM No. 361, which states: "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. [¶] If the defendant failed to explain or deny it is up to you to decide the meaning and importance of that failure."

CALCRIM No. 361 should be given only when a testifying defendant completely fails to explain or deny incriminating evidence or claims to lack knowledge despite the evidence showing the defendant could reasonably be expected to have such knowledge. (*People v. Cortez* (2016) 63 Cal.4th 101, 117.) CALCRIM No. 361 is not directed at the defendant's credibility as a witness, but to the reasonable inferences that may flow from a testifying defendant's silence when that defendant fails to explain or deny evidence against them that is peculiarly within their knowledge. (*Id.* at pp. 117-119.) Because the instruction is not directed at a defendant's credibility, a defendant's testimony that is contradictory to other witnesses' testimony or conflicts with the defendant's extrajudicial statements is not a failure to explain or deny warranting giving the instruction. (*Id.* at pp. 117-118; *People v. Saddler* (1979) 24 Cal.3d 671, 683 (*Saddler*) [discussing substantially similar language in CALJIC No. 2.62].) Similarly, an indirect or vague answer, a failure to recall details, or implausible, bizarre, or unbelievable testimony is not a failure to explain or deny and does not warrant giving the instruction. (*Cortez*, at

7

pp. 117-119; *People v. Roehler* (1985) 167 Cal.App.3d 353, 393 [discussing substantially similar language in CALJIC No. 2.62].)

The People claim the instruction was supported by defendant's claimed lack of recall of topics in his police interviews; his failure to explain what happened to the money he had available to purchase the marijuana; his failure to explain inconsistent testimony about reaching for the van door with the same hand that was holding the gun; and his failure to explain how the Camry was cleaned. These evidentiary gaps do not rise to the level of a failure to deny or explain adverse evidence that was peculiarly within defendant's knowledge. Neither defendant's inconsistent testimony describing the details of the shooting nor his lack of recall of the statements he made to law enforcement is a failure to explain, and they do not support giving the instruction. Moreover, defendant did explain his lack of recall as being caused by the fact he had been lying to the officers. As the People's argument itself reflects, defendant did explain what happened to the money—he said he placed it in the center console of the Camry. As for defendant's failure to explain how the Camry was cleaned, defendant was in custody when this occurred. He testified Michelle told him she was going to have the car cleaned, but he did not learn she had done that until trial. Information about what happened to the money and how the Camry was cleaned was not peculiarly within defendant's knowledge. Because there was no evidence that supported the conclusion defendant failed to explain or deny adverse evidence, the trial court erred in giving this instruction.

The parties disagree as to what standard applies to determine whether the instructional error was prejudicial. Defendant claims the instructional errors reduced the prosecutor's burden of proof by permitting an unjustified inference and infringed upon his right to present a meaningful defense. Based on these claims of federal constitutional error, defendant claims we should evaluate the claimed errors under the standard of prejudice in *Chapman v. California* (1967) 386 U.S. 18, namely, whether the error was harmless beyond a reasonable doubt. The People argue any error is evaluated under the

8

state law standard of *People v. Watson, supra*, 46 Cal.2d 818, namely, whether, in the absence of error, there is a reasonable probability of a more favorable result for defendant.

Defendant cites no authority that error instructing with CALCRIM No. 361 implicates federal constitutional concerns or requires review under *Chapman*. Nor does defendant cite any case that has applied that standard to a claim that there was insufficient evidence to support giving an instruction. Indeed, courts have uniformly applied the harmless error standard of *Watson* when reviewing claims of instructional error pertaining to CALCRIM No. 361 and CALJIC No. 2.62. (See *Saddler, supra*, 24 Cal.3d at p. 683; *People v. Vega* (2015) 236 Cal.App.4th 484, 501; *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1471; *People v. Roehler, supra*, 167 Cal.App.3d at p. 393.) This case presents no reason to depart from that uniformity of decision.

Instructional errors that warrant application of the *Chapman* standard of prejudice are those which potentially infringe on a federal constitutional right or the defendant's due process rights, such as where the instruction improperly describes or omits an element of an offense; misdescribes an alternative theory of guilt; lightens the burden of proof; infringes on a defendant's privilege against self-incrimination; raises an improper presumption; or directs a finding or a partial verdict upon a particular element. (*People v. Hendrix* (2022) 13 Cal.5th 933, 942-943; *People v. Aledamat* (2019) 8 Cal.5th 1, 3, 9; *Saddler, supra*, 24 Cal.3d at pp. 678-680; see also *People v. Flood* (1998) 18 Cal.4th 470, 502-504.) These are claims that the instruction given incorrectly states the applicable law. By contrast, when the claimed error is that the instruction correctly states the law but has no application to the facts of the case (was not factually supported by evidence at trial), we review the claim under the standard in *Watson* because a factual inadequacy is something the jury is fully equipped to detect. (*People v. Canizales* (2019) 7 Cal.5th 591, 612-613; *People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1130.)

Other than a bare assertion, defendant makes no argument that giving CALCRIM No. 361 prevented him from presenting a complete defense and does not identify what defense he was prevented from presenting. Defendant testified on his own behalf and presented a detailed and thorough version of the facts, including his claim of self-defense. He vigorously cross-examined Fierros and challenged the credibility of Fierros's testimony. We find no merit in the claim the instruction prevented defendant from presenting his complete defense. Nor do we find CALCRIM No. 361 otherwise violated defendant's due process rights. The instruction does not remove, or incorrectly describe an element of an offense. Nor does it raise an improper presumption or inference or direct a particular finding. (*Saddler, supra*, 24 Cal.3d at pp. 679-680.) Because we find no federal constitutional error, and the instruction correctly states the law, but had no application to the facts of the case, we apply the *Watson* harmless error standard.

Any harmful impact of CALCRIM No. 361 was mitigated by the language of the instruction itself. It applies only if the jury finds a failure to explain or deny evidence. Even then, the instruction makes clear that such a finding does not create a presumption of guilt or by itself warrant an inference of guilt; nor does it relieve the prosecution of the burden of proving every essential element of the crime beyond a reasonable doubt; and it leaves the meaning and importance of defendant's failure to explain or deny to the jury. (*People v. Ballard* (1991) 1 Cal.App.4th 752, 756-757.) The potential harm of the instruction was further mitigated by CALCRIM No. 200, which instructed the jury "[s]ome of these instructions may not apply, depending upon your findings about the facts of the case. After you've decided what the facts are, follow the instructions that do apply to facts as you find them." We presume the jury followed this instruction. (*People v. Vega, supra*, 236 Cal.App.4th at pp. 502-503.) Consequently, if the jury found that defendant did explain and deny the evidence against him, we can assume the jury disregarded this instruction and defendant cannot have suffered any prejudice.

10

Lastly, in closing argument, although the People argued factors relating to defendant's credibility, such as his admittedly false statements to law enforcement, prior inconsistent statements, self-interest, and the implausibility of his testimony, those issues were the subject of other jury instructions. The People did not argue defendant failed to deny or explain evidence and did not reference this instruction. We cannot conclude it is reasonably probable that defendant would have obtained a more favorable result if this instruction had not been given. Accordingly, the error was harmless.

II

*Senate Bill No. 567*

Defendant contends we must remand for resentencing because the trial court's imposition of an upper term sentence on the unlawful possession of a firearm conviction did not satisfy the new requirements of section 1170, subdivision (b), added by Senate Bill No. 567 (2021-2022 Reg. Sess.). The People agree.

*A. Background*

The probation report indicates defendant was granted five years' formal probation in 2016. A violation of probation petition was filed and found true after the jury verdicts in this case.[6] Based on the testimony in this case, the trial court found defendant had violated his probation in the earlier case.

At the sentencing hearing, relying exclusively on the probation report, the trial court weighed factors in aggravation and mitigation. In aggravation, the court found: The crime involved great violence and demonstrated a high degree of callousness; defendant engaged in violent conduct indicating a serious danger to society; defendant's prior convictions as an adult were numerous or of increasing seriousness; and defendant was on probation at the time of the offense. As a factor in mitigation, the court noted

---

[6] The violation of probation petition itself is not included in our record on appeal, but the true finding is.

11

defendant was youthful, age 25, at the time of the offense.[7] In imposing the upper term sentence, the trial court did not give particular weight to any of these circumstances.

*B. Analysis*

While defendant's appeal was pending, the Legislature enacted Senate Bill No. 567, which took effect on January 1, 2022. Among other things, the bill amended section 1170, subdivision (b) to impose new requirements for trial courts selecting among three possible sentences for an offense. (Stats. 2021, ch. 731, § 1.3.)

As amended, section 1170, subdivision (b) provides that aggravating circumstances now justify the imposition of an upper term sentence only if "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) The amended statute also adds a third acceptable method of factfinding, permitting courts to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) The amended statute now also provides circumstances in which the lower term is the presumptive term when those circumstances have been a contributing factor in the commission of the offense. Those mitigating circumstances include when the defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation or sexual violence" (§ 1170, subd. (b)(6)(A)) and when

---

[7] The probation report indicates defendant was 25 years old at the time of the offense and reflects his birthday as December 10, 1991. The indeterminate term abstract of judgment indicates defendant's date of birth is November 4, 1995, and the determinate term abstract of judgment indicates defendant's birthday is October 1, 1989. The offense took place on July 3, 2017. If October 1, 1989, is defendant's birthday, he would not be a youthful offender. If it is either of the other two dates, he is now presumptively entitled to a lower term sentence under section 1170, subdivision (b)(6).

the defendant was under 26 years old when the offense was committed (§ 1170, subd. (b)(6)(B)).

None of the aggravating circumstances relied on by the trial court here were properly considered and proven as required by amended section 1170, subdivision (b). Defendant did not stipulate to the underlying facts supporting the aggravating factors, neither a jury nor a judge found the underlying facts true beyond a reasonable doubt, and none of the aggravating factors fell within the exception found in amended section 1170, subdivision (b)(3). Thus, resentencing is required unless we find the error was harmless.

The law requires a two-step analysis for determining harmless error: (1) whether the court *could* impose the aggravated term under the Sixth Amendment; and (2) whether the court *would* impose the aggravated term under section 1170. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1112.) We review the first question for prejudice under the standard described in *Chapman* and the second under the standard in *Watson*. (*Id.* at pp. 1112-1113.)

As a first step, there is little doubt defendant was on probation at the time of the offense and that this could have been established in a statutorily permissible manner. Following the jury verdicts, the trial court found defendant had violated his probation. The violation of probation was based on defendant's criminal conduct in this case. It is an obvious predicate fact to finding a probation violation that defendant was on probation at the time. Thus, defendant was on probation when he committed these offenses. We are mindful that the standard of proof for a violation of probation is a preponderance of the evidence (*People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066), but the jury verdicts indicate the facts supporting the violation of probation were found true beyond a reasonable doubt. Defendant did not, and does not, challenge the probation violation finding. Accordingly, we find, "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true" this

13

aggravating circumstance "had it been submitted to the jury." (*People v. Sandoval* (2007) 41 Cal.4th 825, 839.)

As to the second step in our analysis, we conclude there is a reasonable probability the trial court would have imposed a more favorable sentence if it had not relied on aggravating factors that were not proven in accordance with the newly amended statute. Even if we conclude a jury would have found the aggravating factors that defendant's prior convictions as an adult were numerous and of increasing seriousness, as those convictions are reflected in the probation report, we cannot reach such a conclusion as to whether defendant's crimes involved great violence and demonstrated a high degree of callousness and whether he poses a "serious" danger to society. These circumstances involve vague and subjective determinations, and we cannot be confident a jury would have assessed the facts in the same manner as the trial court did. (*People v. Sandoval, supra*, 41 Cal.4th a p. 840.)

Further, and importantly, there was evidence that would have supported a presumptive lower term sentence under section 1170, subdivision (b)(6). The probation report indicated defendant was under the age of 26 at the time of the crime. The court noted defendant's youth as a mitigating factor but did not consider that factor in light of the now presumptive low term sentence. (§ 1170, subd. (b)(6)(B).) In addition, there was evidence defendant was declared a ward of the court in 2006; placed out of his home from 2007 to 2012; began using drugs at age 15; and participated in drug counseling in 2013. This is suggestive of childhood or psychological trauma. (§ 1170, subd. (b)(6)(A).)

The trial court did not have the benefit of section 1170, subdivision (b)(6) at the time of defendant's sentencing hearing and as such, did not conduct the analysis required of that section. When the trial court imposed sentence, defendant was not entitled to a presumptive lower term as a result of his youth at the time of the offense or upon a showing that childhood or psychological trauma was a "contributing factor in the

14

commission" of his offenses. (§ 1170, subd. (b)(6).) Defendant had less incentive to develop (or clarify) the record regarding these issues. By the same token, the trial court had less incentive to assess whether psychological or childhood trauma was a contributing factor. (See *People v. Banner* (2022) 77 Cal.App.5th 226, 242 ["record is likely incomplete relative to statutory factors enacted after judgment [is] pronounced"], citing *People v. Frahs* (2020) 9 Cal.5th 618, 637-638.) When a sentencing court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) The record before us does not make it clear that the trial court would have imposed the upper term had section 1170, subdivision (b)(6) been in effect at the time. (*Banner*, at p. 242.) Accordingly, we must vacate the sentence and remand for resentencing.

## III

### *Assembly Bill No. 1869*

Defendant contends the booking fee and jail classification fees imposed under former Government Code section 29550.2 must be vacated in light of Assembly Bill No. 1869 (2019-2020 Reg. Sess.). The People agree. Because we vacate the sentence and remand for resentencing, we need not address this claim. We note, however, on resentencing, these fees may no longer be imposed. (Assem. Bill No. 1869; Stats. 2020, ch. 92, § 2 [repealing Gov. Code, § 29550.2].)

## IV

### *Errors in Abstract of Judgment*

Defendant also raises claims regarding errors in the abstracts of judgment. The People agree. Because we remand the matter for resentencing, the parties may address these issues to the trial court in the first instance.

## DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated, and the matter is remanded to the trial court for full resentencing, in light of the new legislation. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

                                             /s/
                                    EARL, J.

We concur:

  /s/
ROBIE, Acting P. J.

  /s/
RENNER, J.