Filed 7/31/23  P. v. Ballard CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JIMMY LEONARD BALLARD, Defendant and Appellant. | B317078 (Los Angeles County Super. Ct. No. A634817) |

APPEAL from an order of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Affirmed.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Idan Ivri, Supervising Deputy Attorney General, for Plaintiff and Respondent.

In 1985, defendant and appellant Jimmy Ballard (defendant) and two accomplices planned to lure his ex-girlfriend Yvette Robinson (Robinson) to a remote area to steal cocaine from her; the plan was to rob her of the cocaine she brought to an ostensible drug deal, steal the keys to her residence, and loot her home of more drugs and money stored there. Defendant and one of his accomplices, Fred Catchings (Catchings), obtained a firearm in advance and, on the day of the supposed drug deal, defendant accompanied Robinson in her car to the meeting point—Robinson's three-year-old daughter was with them. At the scene, Catchings shot Robinson twice in the chest and defendant fled, leaving the mortally wounded Robinson and her daughter still at the scene of the crime. We are asked to decide whether substantial evidence supports the trial court's determination that defendant is not entitled to Penal Code section 1172.6 relief because he acted with reckless indifference to human life (defendant does not challenge the court's finding that he was a major participant in Robinson's murder).

## I. BACKGROUND

On the afternoon of December 12, 1985, in response to a radio call, two patrol officers for the Los Angeles Police Department drove to Wadsworth Avenue between 116th and 117th Streets in south Los Angeles. At the time, most of the buildings on that particular stretch of Wadsworth Avenue had been leveled as part of a highway construction project, which made the area isolated.

When the officers arrived at the scene, they found Robinson's body lying face down in the street in a pool of blood

2

next to the open driver's door of an Oldsmobile automobile. Robinson had been shot twice in the chest.

Robinson's three-year-old daughter, Kanisha, was present at the scene when the police arrived. Kanisha told a detective that a third person, "Uncle Jimmy," had been in the vehicle with her and her mother. After interviewing Robinson's relatives, detectives identified "Uncle Jimmy" as defendant; they also learned defendant was Robinson's former boyfriend. That evening, detectives located defendant and interviewed him as a possible witness to the crime.

### A. Defendant's Two Statements to the Police

In an initial statement to investigators, defendant admitted he was present when Robinson was killed. According to defendant, he had been approached by two men interested in purchasing cocaine. Defendant contacted Robinson, who agreed to sell two grams of cocaine to the men for $2,000. The sale was to take place at "the Fields," i.e., at 117th and Wadsworth. Robinson drove defendant to the meeting with Kanisha seated between them in the front seat.

After they parked on Wadsworth Avenue behind the drug purchasers' automobile, which was a 1960s model Chevrolet, a man approached the two parked vehicles. Defendant told the police that when he exited Robinson's car to conduct the sale, the man pulled out a gun and demanded the drugs. Robinson told the robber the drugs were in the vehicle's trunk and gave him the keys.[1] As the robber searched the trunk, defendant convinced

---

[1]    The keys to the Oldsmobile were found by police in the trunk of the vehicle.

Robinson to hand the drugs, which were actually inside the passenger compartment of the vehicle, over to the robber. After she surrendered the drugs, the robber ordered Robinson to give him her money. When Robinson and the robber began to argue, defendant fled the scene. As he was running away, defendant heard two gunshots.

In the meantime, the police had detained George Williams (Williams), the driver of a 1960s model Chevrolet with a license plate number matching that of a vehicle seen leaving the crime scene. Police detectives interviewed Williams, and after that, the detectives considered defendant a suspect in the murder.

The following day, detectives re-interviewed defendant. Detectives advised defendant that Williams had implicated him as responsible for Robinson's murder, but defendant at first continued to deny any responsibility and claimed he was merely a witness to the shooting. Detectives then presented defendant with what they claimed was evidence of his fingerprints in Williams's vehicle, at which point defendant's "whole body kind of drained and [he] kind of sunk in [his] chair."

Defendant thereafter provided an account of the shooting and the events leading up to it that differed significantly from his prior statement. Defendant related that, having previously lived with Robinson, he believed she kept a large amount of cocaine and money (as much as two kilograms and $50,000) at her home. Defendant recruited Catchings to rob Robinson of the drugs and money. The conspirators planned to lure Robinson away from her house for an ostensible drug transaction and then, at gunpoint, pocket the cocaine she would bring with her, take her

4

house keys, and steal the drugs and money stockpiled at her home.[2]

Defendant and Catchings obtained the murder weapon, a .32 caliber revolver, from Williams; Catchings kept the weapon for use in the robbery. Defendant contacted Robinson and she picked him up, with Kanisha, before they drove to the site of the supposed drug deal. Once they arrived, Catchings stole the drugs Robinson brought with her and shot her.

### B. Defendant's Trial, Conviction, and Sentencing

The Los Angeles County District Attorney charged defendant with Robinson's murder (Pen. Code,[3] § 187, subd. (a)). At defendant's trial, audio recordings of defendant's two statements to the police were played for the jury during the prosecution's case.

Defendant testified in his own defense during the defense case. He told the jury "basically the same story" he initially related to the police: he arranged a drug deal between Robinson and Catchings; when Robinson, her daughter, and defendant arrived at the designated meeting spot, Catchings pulled a gun, grabbed Robinson, and robbed her of the drugs in her possession; Catchings then demanded money from both Robinson and

---

[2] The trial record does not reveal what defendant and Catchings planned to do with Robinson while they robbed her home. There are only so many conceivable options, however, if they wanted to ensure Robinson did not interfere with the robbery or retaliate thereafter.

[3] Undesignated statutory references that follow are to the Penal Code.

defendant; as Catchings reached into the car for Robinson's purse, defendant fled; and, while running away, defendant heard gunfire.[4]

In rebuttal, the prosecution called Alfred Montes (Montes), a jailhouse informant, as a witness. Montes testified defendant twice described his planning of and participation in the robbery and death of a woman who sold drugs and whose little girl was present during the crime. Defendant, who liked to "brag about what a big man he was and the capers he pulled," was "break dancing and laughing" as he related his account of the robbery and murder to Montes. Montes also stated defendant offered him money to falsely tell the jury he had been instructed by one of the detectives on how to testify.

The jury was instructed on the felony murder rule and found defendant guilty of first degree murder. The trial court sentenced defendant to 25 years to life for the murder, plus an additional year for an alleged firearm enhancement. We affirmed the judgment on appeal. (*People v. Ballard* (1991) 1 Cal.App.4th 752 (*Ballard*).)

---

[4] Defendant admitted he was not truthful in his first statement to detectives because, he said, he wanted to shield other people from the police investigation. As for his second, more incriminating statement, defendant claimed he admitted involvement in the robbery because the police threatened him with 25 years to life in prison if he did not cooperate and promised him he could walk away if he told them about the murder. As for the details of the purported two-stage robbery plan, defendant testified he made those up because he thought that was what the police wanted him to say.

6

*C.      Defendant's Petition for Resentencing*

In January 2019, defendant, proceeding without the benefit of counsel, petitioned for resentencing pursuant to section 1172.6 (former section 1170.95).  The trial court appointed counsel for defendant and obtained the record of the earlier criminal case.[5] The District Attorney opposed the section 1172.6 petition. Among other things, the District Attorney argued defendant was ineligible for resentencing because he was a major participant in the robbery (he conceived and planned the robbery, recruited Catchings and Williams, and lured Robinson to the ostensible drug deal) and acted with reckless indifference (he helped acquire the murder weapon and rendered no aid to Robinson after Catchings shot her).

The trial court held a hearing on defendant's petition in December 2021.  Neither party presented additional evidence and both sides argued the matter based on the trial record.  Defense counsel conceded defendant was a major participant in the robbery but contended his client was entitled to relief because he did not act with reckless indifference to human life.  The prosecution maintained defendant's reckless indifference was evidenced by, among other things, his decision to press on with the planned robbery despite Kanisha's presence.

The trial court denied defendant's section 1172.6 petition. The court found the evidence at trial indicated "beyond a reasonable doubt" that defendant was a major participant in the

---

[5]      Specifically, the trial court had before it copies of the preliminary hearing transcript, the information, the jury instructions, the signed verdict forms, and this court's opinion in *Ballard*.

underlying felony—the "mastermind planner" in the court's words.  Citing the following facts, the court also found that the evidence showed defendant acted with reckless indifference to human life: "his recruitment of the shooter, his presence when the gun was obtained, his lack of activity to mitigate danger, his failure to render assistance to the victim after she was shot, his abandonment of the scene including the victim's 3[-]year[-]old child, and his lack of surprise that co-defendant Catchings shot the victim."

## II.  DISCUSSION

Substantial evidence supports the trial court's determination that defendant exhibited reckless indifference to human life in aiding and abetting Robinson's murder.  (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270 [review of a trial court reckless indifference finding is for substantial evidence]; see also *In re Scoggins* (2020) 9 Cal.5th 667, 677 [analyzing "the totality of the circumstances to determine whether [the defendant] acted with reckless indifference to human life"] (*Scoggins*).)  Defendant planned a two-stage robbery, recruited accomplices, helped obtain the firearm to be used in the crime, and lured the victim (even with her young child) to an isolated location where she would be robbed and then incapacitated in some manner while her home was robbed.  The plan necessarily called for a crime of long duration and defendant by his own account never sought to restrain commission of the crime or aid the victim.  As we shall explain in additional detail, these facts provide the requisite evidence of reckless indifference to human life.

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave

8

risk of death.'" (*Scoggins*, *supra*, 9 Cal.5th at 676.) The concept "'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Id.* at 676-677.) Participation "in a garden-variety armed robbery, where death might be possible but not probable" is insufficient. (*People v. Banks* (2015) 61 Cal.4th 788, 802; see also *People v. Clark* (2016) 63 Cal.4th 522, 617 ["mere fact" that a robbery involves a gun, "on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference"] (*Clark*).)

Our Supreme Court discussed the factors bearing on whether a defendant acted with reckless indifference to human life in *Clark* (*Clark*, *supra*, 63 Cal.4th at 618-623) and revisited the factors more recently in *Scoggins*, *supra*, 9 Cal.5th 667. They are: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citation.]" (*Id.* at 677.) A defendant's major participation in a murder—a point that is effectively conceded in this appeal—also bears on the question of reckless indifference to human life: as both the United States Supreme Court and our Supreme Court have observed, it is generally the case that the greater the defendant's participation in the murder, the more

9

likely the defendant acted with reckless indifference to human life. (*Tison v. Arizona* (1987) 481 U.S. 137, 153; *Clark*, *supra*, at 615.)

Defendant's reckless indifference to human life is shown by his own confession to the authorities, which the trial court was entitled to credit in lieu of (or in addition to) aspects of his self-serving trial testimony. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

Defendant admitted he planned the two-part robbery scheme that resulted in murder. Defendant and Catchings jointly procured the lethal weapon that would be used in the robbery. Defendant planned to (and did) direct Robinson to an isolated location—which permits an inference either that Robinson's death was planned all along or at least that defendant and his accomplices knew the crime carried with it a grave risk that they would resort to actual violence. Defendant also knew the planned criminal endeavor was not meant to be a short, uneventful holdup; instead, the plan was for a follow-on robbery at Robinson's home—which establishes some incapacitation of Robinson (killing, kidnapping, or, at a minimum, some sort of restraint) was expected to ensure she did not prevent defendant and his accomplices from successfully robbing her home.

Once the plan was in motion, defendant knew Robinson's daughter would be present and the non-lethal options for incapacitation would be further limited. Despite this knowledge, he continued on with the plan and was present at the Fields when Robinson was shot. Defendant never claimed, even during his own testimony at trial, that he attempted in any way to restrain commission of the crime, tried to intervene to prevent Catchings from shooting Robinson, or attempted to aid Robinson

10

or her three-year-old daughter before or after the fatal shots were fired.

To be sure, there was no evidence of what, if anything, defendant knew about Catchings' criminal history or propensity to use violence (other than, perhaps, his willingness to be the one who carried what would be the murder weapon). That fact, however, does not defeat the substantial evidence supporting the trial court's reckless indifference finding. Defendant's role in planning the crime and obtaining the gun to be used, the implications of the two-part robbery plan devised, the duration of the crime (both expected and actual), defendant's presence at the scene of the murder, the lack of any actions to restrain the shooting or aid the victims (we consider Kenisha a victim too), and defendant's demeanor after the murder as described by the jailhouse informant who testified during the prosecution's rebuttal case reveal the requisite reckless indifference to human life.[6] (*Scoggins*, *supra*, 9 Cal.5th at 678 [""the defendant's presence allows him to observe his cohorts so that it is fair to conclude he shared in their actions and mental state. . . . [Moreover,] the defendant's presence gives him an opportunity to act as a restraining influence on his murderous cohorts. If the defendant fails to act as a restraining influence,

---

[6] The reversals in *Scoggins* and *Clark* do not undermine this conclusion. In both of those cases, our Supreme Court held there was insufficient evidence to support a finding of reckless indifference because, even though the defendants in each case planned and organized the robbery, neither was present at the scene. (*Scoggins*, *supra*, 9 Cal.5th at 677-678; *Clark*, *supra*, 63 Cal.4th at 613, 619-620.)

then the defendant is arguably more at fault for the resulting murders"'"'].)


DISPOSITION

The order denying defendant's petition for resentencing is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


KIM, J.


12