Filed 3/27/24  P. v. Tate CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D081982 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1807246) |
| ELVIS EUGENE TATE, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Riverside County, Walter H. Kubelun, Judge.  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

Elvis Eugene Tate appeals from a judgment following convictions on one count of murder in violation of Penal Code[1] section 187, subdivision (a), and one count of driving under the influence of alcohol and a drug, causing bodily injury, in violation of Vehicle Code section 23153, subdivision (g).  He contends the convictions should be reversed because the trial court prejudicially erred in not instructing the jury on gross vehicular manslaughter while intoxicated.  The Attorney General disagrees, and so do we.  Hence we affirm the conviction.

## I.
## Factual and Procedural Background

### A.    *Evidence at Trial*

The evidence adduced at trial is largely undisputed.

One evening in 2018, a car driven by Tate was observed weaving, swerving, cutting off other vehicles, and traveling at high rates of speed, first on the 76 freeway and then on Winchester Road in Riverside County.  Noticing the erratic manner of the car's progress, the driver of another car traveling in the same direction telephoned 911 and used her cell phone to film Tate's car in transit.  Drivers of other cars resorted to evasive maneuvers to avoid being struck by Tate's car.  After running several red lights, Tate's car finally came to rest when it forcefully collided with another car—igniting a fire, killing the other car's driver, and injuring its passenger.

A civilian rendering assistance at the scene detected a strong smell of alcohol on Tate.  A CHP officer detected the odor of alcohol on Tate's breath and the odor of marijuana on his person.  Based on these observations and Tate's slurred speech, bloodshot/red watery eyes, and nystagmus, this officer determined Tate had been impaired at the time of the collision.

---

[1]    All unspecified statutory references are to the Penal Code.

2

A second CHP officer interviewed Tate at the hospital later that evening. Tate gave this officer conflicting accounts as to whether he had consumed alcohol and marijuana that day. Tate also told this officer that he was familiar with the consequences of drinking and driving because that topic had been addressed in coursework he had recently completed toward applying for a class B (commercial) driver's license, as well as in discussions with his wife (a nurse) and in classes he had taken after receiving a DUI conviction years earlier.

Asked specifically about what he had learned in the commercial driving classes he had recently completed, Tate responded:

> "Tate: If somebody [is] killed while I'm driving the car, I'm gonna [go to] jail for the rest, I'm gonna [go to] jail, ain't no ifs, ands or buts about it.
>
> "[¶ . . . ¶]
>
> "Officer: Do you know why . . . you'd go away for the rest of your life?
>
> "[¶ . . . ¶]
>
> "Tate: You['re] supposed to know better and ain't no such thing, even if I was drinking, I should knew better, I should know, uh, to watch the, I, I, I['m] supposed to know better, ain't no excuses.
>
> "Officer: Did they explain to you that if you're driving under the influence that you could possibly be charged with murder?
>
> "Tate: Yes, yes, they told me.
>
> "[¶ . . . ¶]
>
> TATE: [T]hey tell you that you're not supposed to drive with any alcohol in your system. If you drive with alcohol in your system, you can be charged with . . . vehicular homicide.
>
> "[¶ . . . ¶]

3

"Tate:  That's the class I took. . . .  That's what I read."

The foregoing events were presented to the jury via witness testimony and an audio recording of the second officer's interview with Tate.  Also presented to the jury was a misdemeanor DUI plea agreement from a case in which Tate had pleaded guilty, and been convicted, seven years before the 2018 collision.  In this document, Tate's signature appears just below the statement "My blood alcohol reading was .12;"[2] and his initials appear beside this statement:

> "I understand [that] . . . [b]eing under the influence of alcohol or drugs, or both, impairs my ability to safely operate a motor vehicle, and it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both.  If I continue to drive while under the influence of alcohol or drugs, or both, and as a result of my driving, someone is killed, I can be charged with murder (VC § 23593)."

The jury also received evidence through a toxicologist, who testified that a blood sample drawn from Tate approximately two and one-half hours after the collision revealed a blood alcohol content of 0.113 percent and that this would have corresponded to a blood alcohol content at the time of the collision of between 0.138 and 0.163 percent.  The toxicologist further testified that Tate's blood sample also revealed the presence of marijuana and that this indicated both a likelihood that Tate had used marijuana within several hours before the blood draw and a likelihood that Tate was experiencing the psychoactive effects of the drug at the time of the collision.  According to the toxicologist, the alcohol content alone demonstrated Tate

---

[2]    "It is unlawful for a person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle."  (Veh. Code §23152(b).)

4

was too impaired to safely operate a motor vehicle, and Tate's consumption of marijuana so close in time to driving would have amplified that impairment.

## B. *Jury Instructions, Verdict, and Sentence*

In preparation for the giving of jury instructions, the prosecution and defense agreed the jury should be instructed on murder with implied malice under sections 187, subdivision (a), and 188. But they disagreed as to whether the jury should also be instructed on gross vehicular manslaughter while intoxicated under section 191.5, subdivision (a). The trial court resolved this disagreement in favor of the prosecution and thus instructed the jury on murder but not gross vehicular manslaughter while intoxicated.

The jury convicted Tate on both counts charged—murder in violation of section 187, subdivision (a), and driving under the combined influence of alcohol and a drug, causing bodily injury, in violation of Vehicle Code section 23153, subdivision (g)—and found, in connection with the latter count, that Tate had "personally inflicted great bodily injury . . . within the meaning of 12022.7(a) of the Penal Code." The trial court then sentenced Tate, and he timely appealed.

## II.
## Discussion

Tate's principal contention on appeal is that the convictions should be reversed because the trial court's refusal to instruct the jury on gross vehicular manslaughter while intoxicated was error.[3] In support of this contention, Tate argues that such an instruction should be given whenever "a

---

[3] In addition to contending the trial court erred by not instructing the jury on gross vehicular manslaughter while intoxicated, Tate also contends this instructional error caused him prejudice. Inasmuch as we find no instructional error (see *post*), we need not address the contention that Tate suffered prejudice.

5

defendant is charged with second degree murder, the evidence indicates the charge is based on a vehicular homicide while intoxicated, and the evidence shows the only real issue in dispute is the element of implied malice."  We review claims of instructional error de novo.  (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378; *People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

## A. *The Mens Rea Required for Gross Vehicular Manslaughter While Intoxicated Versus for Watson Murder*

Tate's argument is based on his assertion that "[t]he only issue in dispute in this case [i]s whether the defendant acted with implied malice or with a less culpable state of mind."  Thus we begin our examination with a focus on the distinction between the mens rea element of implied malice murder and the mens rea element of gross vehicular manslaughter while intoxicated.[4]

---

[4]  "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187(a).)  Such "malice may be express or implied." (§ 188(a).)

"Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." (§ 191.5(a).)

Vehicular manslaughter with gross negligence without intoxication (§ 192(c)(1)), vehicular manslaughter with ordinary negligence while intoxicated (§ 191.5(b)), vehicular manslaughter with ordinary negligence without intoxication (§ 192(c)(2)), and injury to someone while driving under the influence of alcohol or drugs (Veh. Code § 23153) are lesser included offenses of gross vehicular manslaughter while intoxicated.  But none of these offenses is a lesser included offense of murder.  (Cf. *post.*)

Each of these offenses includes among its elements the "unlawful killing of a human being." (See §§ 187(a), 191.5(a).) But, whereas such a killing must be "with malice aforethought" (§ 188(a)(2)) to support implied malice murder, it must be "with*out* malice aforethought" (§ 191.5(a), italics added) to support gross vehicular manslaughter while intoxicated. Our high court expounded on the difference between these two states of mind in its opinion in *People v. Watson* (1981) 30 Cal.3d 290, 296–297 (*Watson*). It did so by distinguishing in that case between malice, which "may be implied when a person, knowing that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life" and "gross negligence . . . , which has been defined as the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences."[5] (*Id.* at p. 296 ["[i]mplied malice contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence"].)

With the distinction between conscious disregard for life and conscious indifference to consequences squarely in mind, the Court held in *Watson* that " '[o]ne who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining

---

[5]     As our colleagues at the First District have pointed out: "The distinction between 'conscious disregard for life' and 'conscious indifference to the consequences' is subtle but nevertheless logical." (*People v. Olivas* (1985) 172 Cal.App.3d 984, 987.) "Phrased in everyday language, the state of mind of a person who acts with conscious disregard for life is, 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.' " (*Id.* at pp. 987–988.) "The state of mind of the person who acts with conscious indifferences to the consequences is simply, 'I don't care what happens.' " (*Id.* at p. 988.) "It makes sense to hold the former more culpable than the latter, since only the former is actually aware of the risk created." (*Ibid.*)

sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others.' " (*Watson, supra,* 30 Cal.3d at pp. 300–301.) Thereafter, "[i]mplied malice murder involving drunk driving [came to be] 'colloquially known as a *Watson* murder.' " (*People v. Alvarez* (2019) 32 Cal.App.5th 781, 785, fn. 2 (*Alvarez*).)[6]

**B.** ***Supreme Court Case Law Controlling the Circumstances in which a Defendant Charged with Watson Murder Is Entitled to a Gross-Vehicular-Manslaughter-While-Intoxicated Instruction***

After *Watson*, the Supreme Court decided three other cases that go to the core of Tate's arguments on appeal. We address each of these cases in turn.

**1.** ***People v. Breverman* and the Sua Sponte Instructional Rule that Governs Lesser Included Offenses**

In cases too numerous to list here, the Supreme Court over the years has articulated what since 1998 has been commonly referred to as the sua sponte instructional rule. Pursuant to this rule, "a trial court must instruct on an uncharged offense that is less serious than, and included in, a charged greater offense, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of

---

[6] Some years after *Watson* was decided, a legislative overhaul of drunk-driving legislation led to modification and re-codification of the gross vehicular manslaughter provision (former § 192(3)(a)) at issue in *Watson*. But the new legislation emphasized that a new provision intended to address vehicular manslaughter *while intoxicated* must not be interpreted as supplanting *Watson*. (See § 191.5(e) ["This section shall not be construed as prohibiting or precluding a charge of murder under Section 188 upon facts exhibiting wantonness and a conscious disregard for life to support a finding of implied malice, or upon facts showing malice consistent with the holding of the California Supreme Court in *People v. Watson*, 30 Cal.3d 290."].)

the charged greater offense are present." (*People v. Huggins* (2006) 38 Cal.4th 175, 215.)

Among the judicial opinions most closely associated with the rule is the case—*People v. Breverman* (1998) 19 Cal.4th 142 (*Breverman*)—in which our Supreme Court first coined the phrase by which the rule has come to be known. As Justice Baxter explained in the majority opinion in that case:

> "[T]he sua sponte instructional rule . . . prevents the 'strategy, ignorance, or mistakes' of either party from presenting the jury with an 'unwarranted all-or-nothing choice,' encourages 'a verdict . . . no harsher or more lenient than the evidence merits' [citation] and thus protects the jury's 'truth-ascertainment function' [citation].
>
> "[T]he rule seeks the most accurate possible judgment by 'ensur[ing] that the jury will consider the full range of possible verdicts' included in the charge, regardless of the parties' wishes or tactics. [Citation.] The inference is that every lesser included offense, or theory thereof, which is supported by the evidence must be presented to the jury."

(*Breverman,* at p. 155, italics deleted; see also *People v. Hicks* (2017) 4 Cal.5th 203, 210 (*Hicks*) [noting "that an all-or-nothing choice encourages a high-risk, high-reward gambler's approach to criminal justice" and "that ' "[o]ur courts are not gambling halls but forums for the discovery of truth" ' "].)

## 2. *People v. Birks* and the Rule Governing Instructions on Lesser *Related* Offenses

*Breverman* held the sua sponte instruction rule must be applied to lesser *included* offenses. But what of lesser *related* offenses?[7] Might a trial court have a sua sponte duty to instruct on a lesser *related* uncharged offense if the jury has been presented with substantial evidence to support it? *Breverman* did not address this question.[8] But another opinion that issued the same day as *Breverman did.* That case was *People v. Birks* (1998) 19 Cal.4th 108 (*Birks*).

In *Birks*, the high court revisited its holding in *People v. Geiger* (1984) 35 Cal.3d 510 (*Geiger*)—a case in which it had concluded that decision-making authority as to whether a jury must be instructed on a lesser related offense is to be vested, not with the trial court, but with the defense. (*Birks,*

---

[7] "If a lesser offense shares some common elements with the greater offense, or if it arises out of the same criminal course of conduct as the greater offense, but it has one or more elements that are not elements of the greater offense as alleged, then it is a lesser related offense, not a necessarily included offense." (*Hicks, supra,* 4 Cal.5th at p. 209.)

[8] Justice Mosk touched on the topic in a dissent in *Breverman* in which he argued that "manslaughter, as currently understood, is a lesser offense *related* to the greater charged offense of murder" (*Breverman, supra,* 19 Cal.4th at pp. 182–184 (dis. opn. of Mosk, J.)), rather than a lesser *included* offense of murder. But the majority rejected this argument as irrelevant (*id.* at p. 154, fn. 5 (maj. opn.)) and held instead "that manslaughter qualifies as a lesser included offense of murder, and thus a trial court has a sua sponte duty to instruct on heat of passion and imperfect self-defense when the evidence raises a question as to those issues." (*People v. Schuller* (2023) 15 Cal.5th 237, 255–256 [citing *Breverman*, at pp. 153–155]; cf. *People v. Sanchez* (2001) 24 Cal.4th 983, 990 (*Sanchez*) [describing as "well-established" "the settled practice of treating manslaughter as an offense necessarily included within murder"].)

*supra,* 19 Cal.4th at p. 112 ["*Geiger* concluded that instructions on lesser merely 'related' offenses can be given *only upon the defendant's request.*"].)

After engaging in an extensive analysis of precedents and policy considerations, the Court in *Birks* concluded that *Geiger*, decided just 14 years earlier, had been "wrong to hold that a criminal defendant has a unilateral entitlement to instructions on lesser offenses which are not necessarily included in the charge." (*Birks,* 19 Cal.4th at p. 136.) So holding, the Court held that "*Geiger* is therefore overruled." (*Ibid.*; see also *Breverman, supra,* 19 Cal.4th at p. 168, fn. 16 ["in [our] companion decision [in *Birks*, we] abrogate the California rule entitling the defendant to demand instructions on lesser merely related offenses supported by the evidence"].) As a consequence of this holding, "[a] defendant has no right to instructions on lesser related offenses, even if he or she requests the instruction and it would have been supported by substantial evidence, because California law does not permit a court to instruct concerning an uncharged lesser related crime unless agreed to by both parties." (*People v. Jennings* (2010) 50 Cal.4th 616, 668.)

3.   ***People v. Sanchez* and Whether Gross Vehicular Manslaughter While Intoxicated is a Lesser *Included*, or Just a Lesser *Related*, Offense of Murder**

Three years after its rulings in *Breverman* and *Birks*, the Supreme Court considered whether gross vehicular manslaughter while intoxicated is a lesser *included*, or just a lesser *related*, offense of murder. (*People v. Sanchez* (2001) 24 Cal.4th 983 (*Sanchez*).) Specifically, in *Sanchez*, the court decided that, notwithstanding the presence of the word "manslaughter" in its name, the offense of gross vehicular manslaughter while intoxicated "is not" (*Sanchez,* at p. 985), and "should not be *treated* as" (*id.* at p. 992, italics

11

added), a lesser included offense of murder. Instead, it is—and should be treated as—a lesser *related* offense of murder.[9]

The holding in *Sanchez* was not without its critics. Justice Kennard in particular noted that, "[w]hen an intoxicated driver becomes involved in a fatal accident, a prosecutor may elect to charge the driver only with murder, without also charging any form of vehicular manslaughter" and that, "under the majority's holding, trial courts may not instruct on vehicular manslaughter as a lesser included offense of murder." In such circumstances, she pointed out, "juries will face the difficult and troubling all-or-nothing choice between a murder conviction and an acquittal" and will be "den[ied] . . . 'the opportunity to consider the full range of criminal offenses established by the evidence.' " (*Sanchez, supra,* 24 Cal.4th at p. 1001 (dis. opn. of Kennard, J.) [citing *Birks, supra,* 19 Cal.4th at p. 127 and quoting other authority].)

## C.   *Tate's Argument*

Channeling the concern that Justice Kennard expressed in *Sanchez*, and invoking the policy considerations discussed in *Breverman*, Tate argues in this case that the trial court's refusal to instruct on gross vehicular manslaughter while intoxicated left Tate's jury with precisely the kind of stark binary choice against which Justice Kennard had warned:

> "A juror not instructed on vehicular manslaughter while
> intoxicated as a lesser offense to second degree murder
> based on a vehicular homicide faces an all-or-nothing

---

[9]   As the court explained in *Sanchez*, "gross vehicular manslaughter while intoxicated" is not a lesser included offense of murder because it "requires proof of elements that need not be proved when the charge is murder, namely, use of a vehicle and intoxication." (*Sanchez, supra,* 24 Cal.4th at p. 989.)

12

choice: convict the defendant of murder or acquit him entirely. This is particularly problematic in cases where it is clear the defendant caused the death of an innocent person in a vehicle collision. Jurors are required to either acquit a defendant they know committed homicide, or convict them of murder, even if they believe vehicular manslaughter while intoxicated is a more accurate reflection of the defendant's criminal culpability.

"[¶ . . . ¶]

"Even if the issue of malice is in doubt, if it is clear the defendant caused the death of another person through gross negligence[, then] the jurors are likely to resolve doubts in favor of conviction even if they should find the defendant not guilty."

Invoking this reasoning, Tate argues that reducing his case to an all-or-nothing choice between a murder conviction or acquittal without offering a middle ground—such as a vehicular manslaughter instruction would have afforded—worked an injustice amounting to error.

But Tate's argument runs headlong into the binding precedents of *Birks* and *Sanchez* because, as discussed *ante*, gross vehicular manslaughter while intoxicated is a lesser related offense (*Sanchez*) that was not charged in this case, and a trial court is forbidden to instruct on an uncharged lesser related offense unless the prosecution agrees (*Birks*). These cases are not just a hurdle in Tate's path. They are a barrier.

Recognizing as much, Tate concedes this court "is bound by the holding of *Sanchez*" and "by the analysis in *Birks*." But, he continues, we are "*only* bound . . . not gagged" (italics added). Thus he contends we should urge the Supreme Court to reconsider its holdings in *Sanchez* and *Birks*.

We decline the invitation.

As a threshold matter, we are of course required to follow precedent. (See *People v. Lagunas* (2024) 97 Cal.App.5th 996, 1008 (*Lagunas*)

["California courts are required to follow precedent."]; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Moreover, the Supreme Court *already* has reconsidered the instructional rule for lesser related offenses in comparatively recent years[10] (see *ante*), it has emphasized that this reconsideration was thorough (see *Breverman, supra,* 19 Cal.4th at p. 156 [debate over abrogation of rule was "vigorously advanced" and "received complete and focused briefing" in *Birks*]; *Birks, supra,* 19 Cal.4th at p. 112 [the rule's abrogation was a matter of "careful reflection" by the court]), and it has made abundantly clear that all seven justices were of the view that *Geiger's* "extension of the right to instructions on lesser offenses" was "unwarranted," "ill-considered," and/or "wrong."[11] As for the Supreme Court's decision that gross vehicular manslaughter while intoxicated is not a lesser included offense of murder, Justice Kennard's dissent in *Sanchez* (see *ante*) reveals that the Court

---

[10]  Although Tate says he is seeking *re*consideration, the fact that the issues at hand were considered in *Geiger* and then reconsidered in *Birks* reveals that what Tate really is seeking is *re-re*consideration.

[11]  (See *Birks, supra,* 19 Cal.4th at pp. 112, 136 (maj. opn.) ["[o]n careful reflection we now agree that Geiger represents an unwarranted extension of the right to instruction on lesser offenses;" "*Geiger* was wrong to hold that a criminal defendant has a unilateral entitlement to instructions on lesser offenses which are not necessarily included in the charge"]; see also *id.* at pp. 139–141 (conc. opn. of Brown, J.) [*Geiger* was "unworkable;" its abrogation was "long overdue"]; *id.* at pp. 138–139 (conc. opn. of Mosk, J.) [*Geiger* "unworkable" and "ineffectual"]; *id.* at p. 139 (conc. opn. of Werdegar, J.); *Breverman, supra,* 19 Cal.4th at p. 156, fn. 6 ["in *Birks* we today overturn the ill-considered rule allowing defendants to demand instructions on lesser *related* offenses"].)

14

understood the majority's decision would yield results of precisely the sort that Tate has experienced in this case.

Further, it is evident from the Court's opinion in a more recent vehicular homicide case that the Court remains of a mind that "the goal of enabling a jury to return the most accurate verdict that the evidence supports does not require that every possible crime a defendant may have committed be presented to the jury as an alternative" and that "a jury need only be instructed on offenses that the prosecution actually charged either explicitly or implicitly (because they were necessarily included within explicitly charged offenses.)" (*Hicks, supra,* 4 Cal.5th at p. 211; cf. *Alvarez, supra,* 32 Cal.App.5th at p. 789 [adding emphasis to language just quoted].)

As our colleagues stated in another *Watson* murder appeal that this court decided in recent years:

> "[G]ross vehicular manslaughter while intoxicated is a lesser related offense but not a lesser included offense of *Watson* murder. '[I]nstruction on a lesser related offense is proper only upon the mutual assent of the parties.' (*People v. Taylor* (2010) 48 Cal.4th 574, 622 . . . [citing and declining to reconsider *Birks*].) 'Here, because the prosecutor objected to the instruction on the crime of [gross vehicular manslaughter while intoxicated], the trial court correctly denied defendant's request.'"

(*Alvarez, supra,* 32 Cal.App.5th at p. 790; cf. *Lagunas, supra*, 97 Cal.App.5th at 1011 ["we hold the trial court did not commit error by failing to instruct the jury on its own motion on the lesser related offense of gross vehicular manslaughter while intoxicated"].)

### III.
### Disposition

The judgment is affirmed.

KELETY, J.

15

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.